[L. A. No. 1941. In Bank.—February 18, 1908.]

GASPAR A. HUFFNER et al., Respondents, v. F. R. SAWDAY et al., Appellants.

PLEADING—DEMURRER—UNCERTAINTY IN COMPLAINT.—The overruling of a demurrer to a complaint on the ground of uncertainty affords no ground for a reversal when it is apparent from the record that the defendants were not thereby misled or embarrassed in making their defense.

WATER-RIGHTS — RIPARIAN PROPRIETORS — OCCASIONAL DRYNESS OF STREAM—CHANGE OF CHANNEL.—The facts that the bed of a stream does not at all seasons of the year carry a flowing body of water, and that the location of the channel of the stream is subject to change, are not inconsistent with the existence of a natural watercourse, nor do they deprive those owning land fronting on the bed of the stream of the character of riparian proprietors.

ID.—RIPARIAN PROPRIETOR—INJUNCTION—INJURY NEED NOT BE SHOWN.—The right of a riparian proprietor to restrain the diversion by others than riparian owners of water which would, if undisturbed, flow past his lands does not rest upon the extent to which he has used the water, nor upon the injury which might be done to his present use. Even if a riparian proprietor has never made any use of the water flowing past his land, he has the right to have it continue in its customary flow, subject to such diminution as might result from reasonable use by other riparian proprietors. This is a

right of property, a part and parcel of the land itself, and the riparian proprietor is entitled to have restrained any act which would infringe upon such right.

ID.—APPROPRIATOR MUST SHOW INJURY TO RESTRAIN DIVERSION.—One entitled to a water-right in a stream which is based upon prior appropriation and use cannot restrain a diversion of the waters of the stream without showing that the diversion would diminish the flow of water which he had been receiving for use.

ID.—INADEQUATE SUPPLY OF WATER—CONTINUITY OF USE.—The fact that an appropriator of water, for several years prior to the commencement by him of an action to restrain an unauthorized diversion, by reason of the dryness of the seasons, had not been able to get as much water as theretofore did not destroy the continuity of his use, nor deprive him of the right to use the amount formerly diverted in the event that the flow of the stream should again furnish such amount.

ID.—DIMINISHED SATURATION OF BED OF STREAM.—The diversion of water from the upper portion of a stream, the natural effect of which is to prevent or diminish the saturation of the sandy bed underlying the stream and thereby materially postpone the time when a surface flow would come to the lands of a lower appropriator, is a material injury to such lands.

ID.—INJUNCTION AGAINST DIVERSION—RIGHT TO FLOOD WATERS.—Defendants who have been enjoined at the instance of riparian proprietors and appropriators from diverting any of the waters of a stream cannot complain of the judgment, which was otherwise correctly rendered, merely because it did not specifically reserve to them a right to the flood waters of the stream, when no such right was asserted in their answer.

ID.—JUDGMENT—RETURN OF WATER TO STREAM.—A decree enjoining the unlawful diversion of the waters of a stream at the instance of lower riparian proprietors and appropriators is not erroneous in failing to permit the diversion on condition that the water was returned to the stream above the plaintiffs' land undiminished in its natural flow, when there is evidence showing that such a return would have been a physical impossibility.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

W. R. Andrews, and Collier, Smith & Holcomb, for Appellants.

V. E. Shaw, and Shaw & Winnek, for Respondents.

SLOSS J.—This is an action to enjoin the defendants from diverting water from a stream known as the San Pasqual River. The plaintiffs recovered judgment, and the defendants appeal from the judgment and from an order denying their motion for a new trial.

The complaint sets forth two counts or causes of action. Each of the counts alleges that the San Pasqual River is a stream arising in the Volcan Mountains in San Diego County, whence it flows in a westerly course through the San Pasqual Valley to the Pacific Ocean; that the plaintiffs are respectively, owners of seventeen several parcels of land in the San Pasqual Valley, each of which is irrigable and in cultivation, and that said plaintiffs and their predecessors have, for more than thirty years, cultivated their land by means of water taken from said stream, which furnishes the only means of irrigating these lands, It is alleged that the defendants assert the right to, and, unless restrained, will divert at a point about twenty-five miles above plaintiffs' lands, the waters of the stream to the extent of three thousand inches, and that, if the defendants are permitted to make this diversion, each of the plaintiffs will be deprived of water for irrigation.

The foregoing averments are, as has been said, common to both counts. The first contains the further allegation that the San Pasqual River in its natural course flows over, through and along each of the tracts described as belonging to the various plaintiffs, and that the defendants' asserted right of diversion is based upon a notice of appropriation, according to which the water is to be used upon land situated outside of the watershed tributary to San Pasqual River. The second count alleges, in addition to what has been stated, that twenty-five hundred inches of water are required to properly irrigate the lands belonging to the plaintiffs, and that, in order to obtain such supply, the plaintiffs and their predecessors did, prior to 1878, appropriate from the waters of the stream, twenty-five hundred inches, and they have ever since diverted all the water flowing in said stream up to twenty-five hundred inches, and conducted the same upon their several tracts, for use therein. It is further alleged, in the second count, that the water in the stream at plaintiffs' point of diversion rarely exceeds two thousand inches, and during most of the irrigating season is less than one thousand inches.

It will be seen that the plaintiffs rely upon two different grounds of objection to the proposed diversion by defendants. In the first count they stand upon their right as riparian proprietors; in the second count they assert a claim as prior appropriators. It may be said at this point that no error was committed in overruling the demurrer to the complaint. The sufficiency of each count to state a cause of action was not, and is not now, questioned. The only points made are that the complaint is uncertain in some particulars. We think the pleading is not open to the objections raised, but even if it were, it is apparent from the record that the defendants were not thereby misled or embarrassed in making their defense, and the overruling of the demurrer would therefore afford no ground for reversal. (*Gassen* v. *Bower,* 72 Cal. 555, [14 Pac. 206]; *Alexander* v. *Central L. & M. Co.,* 104 Cal. 532, [38 Pac. 410]; *Rooney* v. *Gray Brothers,* 145 Cal. 753, [79 Pac. 523].)

The answer denies all the allegations of each count, except as to the source of the San Pasqual River and the assertion by defendants of the right, and their intention to take and divert three thousand inches of the waters of the stream, as alleged by plaintiffs. The defendants also plead a separate defense, in which they allege that they hold, pursuant to the mining laws of the United States, certain placer mining claims, of the value of over one million dollars. That it is necessary, in order to work these claims, to take the waters of the stream to the extent of three thousand inches. It is further averred that on April 8, 1893, they posted at the proposed point of diversion a notice of appropriation of the waters of the San Pasqual River to the extent aforesaid, in accordance with the provisions of section 1415 of the Civil Code, that they duly recorded their notice, commenced the construction of their ditch and tunnel within sixty days after posting their notice, and have ever since continued such construction diligently and uninterruptedly, the work already done being of the value of twenty-five thousand dollars and amounting to three-fourths of the work necessary to be done. It is alleged that this work was done by the defendants in good faith and with the acquiescence and consent of plaintiffs. The answer further alleges that six sevenths of the water of the watershed flows into the stream below defendants' point of diversion, and that

the stream flows on the surface "only during times of flood
and immediately thereafter, at all of which times there is
sufficient water to supply the plaintiffs fully and adequately
without taking or requiring any of the waters claimed by de-
fendants."

The court found that the San Pasqual River is a water-
course as alleged in the complaint; that the plaintiffs are the
owners of the respective tracts claimed by them; that ten of
the seventeen holdings described in the complaint border upon
the stream. It is found that the plaintiffs' lands have been
irrigated from the stream for twenty-five years, and would be
of little value without irrigation. The findings declare that
for the past eight years the entire flow of the stream has been
inadequate to irrigate the lands of the plaintiffs, and that if
the defendants are permitted to divert the waters from the
stream, each of the plaintiffs will be deprived of water for ir-
rigating his tract of land and will suffer irreparable loss and
damage. The court found that the defendants had posted and
recorded their notice of appropriation, and had performed the
work as alleged in their answer, but had not prosecuted the
same diligently. The place to which the defendants claim the
right to take the water is found to be on a different water-
shed from that tributary to the San Pasqual River. There
is a finding against the plea of acquiescence and consent on
the part of the plaintiffs. The judgment decrees that the de-
fendants have no right or title to the waters of the San Pasqual
River, and no right to divert the same, and perpetually en-
joins them from taking or diverting from the river any of the
waters of the stream, or in any manner whatsoever interrupt-
ing, obstructing, or interfering with the free, usual, or cus-
tomary flow of water down or through said stream.

Many of the findings are attacked as unsupported by the
evidence. In connection with the finding of the existence of a
watercourse as alleged, attention is called to evidence that the
San Pasqual River does not, at all seasons of the year, carry
a flowing body of water through the San Pasqual Valley, in
which the plaintiffs' lands are situated, and that the location
of the river-bed or channel is subject to change. It appears that
in this valley the stream is dry during the summer months, and
that its surface flow begins, in years of ordinary rainfall,
about the end of November, and ceases in June. The soil is

sandy, and the river bed "varies greatly and changes often," as stated by a witness for the plaintiffs. These circumstances are not inconsistent with the existence of a watercourse, nor do they deprive those owning land fronting on the bed of the stream of the character of riparian proprietors. (*Lux* v. *Haggin*, 69 Cal. 255, 417, 418, [4 Pac. 919, 10 Pac. 674]; *Spangler* v. *San Francisco*, 84 Cal. 12, [18 Am. St. Rep. 158, 23 Pac. 1019]; *Los Angeles Cemetery Assoc.* v. *City of Los Angeles*, 103 Cal. 461, [37 Pac. 375].)

Finding 15, to the effect that a large part of each of the tracts described in the complaint has for twenty-five years been continuously cultivated by means of water taken from the stream is, it is contended, contrary to the evidence. The finding on this point is, so far as concerns the plaintiffs who have riparian rights, not material. Their right to restrain the diversion, by others than riparian owners, of water which would, if undisturbed, flow past their lands, does not rest upon the extent to which they have used the water, nor upon the injury which might be done to their present use. Even if these plaintiffs had never made any use of the water flowing past their land, they had the right to have it continue in its customary flow, subject to such diminution as might result from reasonable use by other riparian proprietors. This is a right of property, a "part and parcel" of the land itself (*Duckworth* v. *Watsonville W. & L. Co.*, 150 Cal. 520, [89 Pac. 340]), and plaintiffs are entitled to have restrained any act which would infringe upon this right. In *Southern California I. Co.* v. *Wilshire*, 144 Cal. 68, [77 Pac. 767], the court said: "It is not necessary in such cases for the plaintiff to show damage, in order that it may be entitled to a judgment. It is enough if it appears that the continuance of the acts of the defendants will deprive it of a right of property, a valuable part of its estate. The taking of the water beyond the watershed would, therefore, be an injury to the plaintiff's riparian right which, under the pleadings and findings in the case, the plaintiff was entitled to have enjoined." In *Stanford* v. *Felt*, 71 Cal. 249, [16 Pac. 900], it is said: "Nor is the owner lower down the stream required to show, in order to procure an injunction, any actual present damage. The diversion, by lapse of time, may grow into a right. To prevent such result, an injunction will be awarded."

These and other authorities to the same effect are reviewed in *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327, [88 Pac. 978], in which the doctrine is reasserted.

In so far, however, as the rights of the plaintiffs rest upon prior appropriation and use, it was no doubt necessary for them to show that the proposed diversion would diminish the flow of water which they had been receiving for use upon their lands. That a part of the lands of each of the plaintiffs had been, for many years, irrigated by means of water taken from the stream whenever the supply of water permitted was fully shown by the evidence. The last seven years preceding the trial of the action had been exceptionally "dry," and during them the flow of water had ceased earlier in the spring than in former years. The fact that during this period the plaintiffs had not been able to get as much water as theretofore did not destroy the continuity of their use, nor deprive them of the right to use the amount formerly diverted in the event that the flow of the stream should again furnish such amount. It is urged that there is no evidence to support the finding that the proposed diversion by defendants would cause irreparable damage or loss to plaintiffs. But the plaintiffs offered evidence to show that during the seven or eight years preceding the trial, the flow of water in the stream had been so light that there was no surface flow at the lower end of the valley. One of defendants' witnesses testified that nobody in the San Pasqual Valley "gets plenty of water for irrigation." It is apparent that if, as matters now stand, the plaintiffs are unable to get from the stream all the water they need (and claim to be entitled to), they will be damaged, if defendants are permitted to divert, at a higher point, three thousand inches of the water of the stream. It is true that there is evidence to the effect that during the summer months, when the stream is dry in the San Pasqual Valley, there is some water running at the defendant's point of diversion. It does not follow, however, that the taking of this water would not injure the respondents. There are long stretches of sandy bottom between the defendants' proposed works and the lands of the plaintiffs. Water flowing over the rocky bed above sinks into the sand, which must become saturated before there can be a flow over its surface. To so fill this sand requires, as witness testifies, several weeks. The court was justified in drawing from this testi-

mony the inference that an interruption to the flow of this water would prevent or diminish the saturation of the sandy bed underlying the stream and thereby materially postpone the time when a surface flow would come to plaintiffs' lands. Such postponement would be a clear injury to the plaintiffs, whose interest in the waters of the stream included the right to have the river bed continue to hold sufficient water to supply and support the surface stream in its natural state. (*Los Angeles* v. *Pomeroy,* 124 Cal. 621, [57 Pac. 585]; *McClintock* v. *Hudson,* 141 Cal. 275, [74 Pac. 849]; *Cohen* v. *La Cañada Co.,* 142 Cal. 437, [76 Pac. 47]; *Verdugo Cañon Water Co.* v. *Verdugo,* 152 Cal. 655, [93 Pac. 1021], filed Jan. 23, 1908.)

The appellants make the further point that they are restrained from taking any of the water of the stream, although the evidence shows that, in times of flood, large quantities of water, far exceeding any amount that can be used by the plaintiffs, passes down the stream. It has been held that an injunction will not issue to restrain a diversion of water during times of extraordinary floods where such diversion will not perceptibly diminish the stream below. (*Edgar* v. *Stevenson,* 70 Cal. 286, [11 Pac. 704]; *Heilbron* v. *76 Land and Water Co.,* 80 Cal. 189, [22 Pac. 62]; *Fifield* v. *Spring Valley W. W.,* 130 Cal. 552, [62 Pac. 1054].) But the pleadings in this case raise no issue as to the right to take flood waters. The answer contains an allegation (hereinbefore quoted) with reference to the flow of the stream during times of flood, but the purpose of this allegation was, not to claim the flood waters for defendants, but to limit the plaintiffs to the surplus of flood waters remaining after the defendants had taken the three thousand inches claimed by them. As was said in *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327, [88 Pac. 978], "The defendants do not propose to limit the diversion to times of high water, but, on the contrary, they will take it during the time of its greatest scarcity. There is no question of the diversion of flood water involved in the case. The right which they assert is to take the ordinary water of the stream." It may be questioned whether the decree, properly construed, purports to deal with anything beyond the ordinary flow of the stream. But, in any event, the appellants are not in a position to complain that the court did not in specific terms reserve to them a right which they had not asserted.

The point is made that the decree should have permitted the defendants to divert the water, on condition that they returned it to the river above plaintiffs' lands, no less diminished than it would have been in its natural flow to the point of return. It may be that a decree so limited would have been proper if the evidence had shown that the defendants were able and willing to make such return of the water. (*Gould* v. *Eaton,* 117 Cal. 539, [49 Pac. 577]; *Montecito Valley Co.* v. *Santa Barbara,* 144 Cal. 578, [77 Pac. 1113].) But here there was testimony from one of the defendants themselves that the water if diverted would return to the San Pasqual Valley through the Santa Maria Creek, and evidence was introduced to show that this creek joins the San Pasqual below the lands of the plaintiffs. If, as the trial court had the right to believe, this was the true state of facts, there was no way in which the defendants could divert the water claimed by them without injury to the plaintiffs.

The findings already discussed lead to the conclusion that the plaintiffs, whether as riparian proprietors or as prior appropriators of all the waters ordinarily flowing in the stream, had a right superior to that of the defendants, even if the latter did everything required under the statute to constitute a valid appropriation. There is no occasion, therefore, to consider whether the evidence justified the finding that the defendants had failed to prosecute their work diligently. If the finding on this point had been in their favor, it would not have enlarged the rights of the appellants.

The judgment and order are affirmed.

Shaw, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.