[Civ. No. 1147.   First Appellate District.—February 28, 1913.]

# A. WIDEMANN COMPANY (a Corporation), Respondent, v. R. M. DIGGES, Appellant.

SALE—ACTION BY SELLER FOR DAMAGES—ALLEGATION OF NONPAYMENT.— An allegation in a complaint for breach of contract to buy grain that the defendant "failed and refused to accept said grain. and to perform his agreement, and refused to pay the purchase price of said grain or any part thereof," together with an allegation that because of such refusal and failure the plaintiff "was compelled to sell said grain to another," sufficiently alleges the fact of nonpayment and is not a mere conclusion of the pleader.

ID.—DEFINITION OF WORD "FAIL."—To fail means to leave unperformed, to omit, to neglect; and therefore the allegation that the defendant failed to pay was a direct allegation of nonpayment.

ID.—CURE BY JUDGMENT IN ABSENCE OF SPECIAL DEMURRER.—If the complaint is defective in alleging nonpayment the defect is, in the absence of a special demurrer, cured by judgment.

ID.—FAILURE TO ALLEGE OWNERSHIP OF CLAIM SUED ON—WAIVER OF DEFECT.—A defect in the complaint in not alleging that the plaintiff was the owner at the commencement of the action of the claim assigned to and sued on by him will not be considered in the absence of a special demurrer.

ID.—FAILURE TO ALLEGE DATE OF TENDER—HARMLESS ERROR.—If an allegation of tender by the plaintiff is indefinite or uncertain as to the date thereof, error in overruling a demurrer to it on that ground, not resulting in injury or disadvantage to the defendant, is harmless.

ID.—DELIVERY OF GRAIN BY SELLER—NOTICE—WAREHOUSE RECEIPTS.— Where the contract for the sale of the grain provided for delivery between August 15th and September 1st, and in July the seller notified the buyer that the grain was ready for delivery and tendered him the warehouse receipts therefor, but the buyer refused the tender as premature, and thereafter the seller assembled the grain at one point and on the 29th of August gave warehouse receipts to his agent with instructions to deliver them to the buyer on his payment of the purchase price of the grain, and the agent, being unable to find the buyer because of his absence from the county, left a written notice at his residence and also mailed him a duplicate which was received in due course of mail, and the notice was handed to him on the morning of September 1st after his return, the delivery of the grain is timely; section 1858b of the Code of Civil Procedure providing that the transfer of negotiable warehouse receipts is a symboli-

cal delivery of the goods called for by them, and passes the title thereto as effectually as if an actual delivery had been made.

ID.—NOTICE OF TIME AND PLACE OF DELIVERY.—Such notice satisfies the requirement of the law that if the contract of sale did not designate the warehouses in which the grain was to be assembled, the buyer was entitled to notice of the time and place at which delivery would be made a reasonable time in advance thereof.

ID.—FAILURE OF NOTICE DUE TO FAULT OF BUYER.—If such notice, because of the buyer's absence from home, had not reached him until the expiration of the time limited, the fault would have been his and he could not complain.

APPEAL from a judgment of the Superior Court of Monterey County and from an order refusing a new trial. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Seidenberg & Davis, for Appellant.

Zabala & Bardin, for Respondent.

LENNON, P. J.—This action was for damages for defendant's alleged breach of a contract expressed in writing as follows:

"KING CITY, CAL., April 15, 1910.

"I have this day bought of E. A. Eaton five hundred tons barley, grading A No. 1 feed, San Francisco Merchants' Exchange standard, and agree to pay to said E. A. Eaton the sum of one dollar per cental for all of said barley delivered at any Salinas Valley warehouse where freight rate to San Francisco does not exceed $3.00 per ton. Payment to be made immediately upon delivery. Delivery to be made at any time between this date and September 1st, 1910, and have this day paid one dollar on account of this purchase.

"(signed) R. M. DIGGES.
"E. A. EATON."

"KING CITY, CAL., April 15, 1910.

"I have this day sold to Robert Digges 500 tons barley grading A 1 feed, Merchants' Exchange standard, to be delivered at any time between this date and September 1st, 1910, for one dollar per cental net to me. Delivery at any S. P.

Milling Company warehouse in the Salinas Valley where freight rate to San Francisco does not exceed $3.00 per ton.
                                        "(signed) E. A. EATON."

The defendant demurred to the complaint generally upon the ground of the insufficiency of the facts stated to constitute a cause of action, and in addition specified fourteen particulars in which it was claimed that the complaint was uncertain and ambiguous. Upon the overruling of the demurrer the defendant answered by denying all of the material allegations of the complaint, and upon the issues thus raised the case was tried with a jury. Upon a verdict rendered in favor of the plaintiff judgment was entered against the defendant in the sum of $1,957.55, from which and from an order denying a new trial the defendant has appealed upon the judgment-roll and a bill of exceptions.

Plaintiff's complaint, after alleging in effect the execution of the foregoing contract, averred that between the fifteenth day of April and the first day of September, 1910, said E. A. Eaton, being able and willing to perform his part of the contract, tendered to said R. M. Digges the said grain, and performed each and every act required of him in the manner and at the time prescribed by the agreement; that said R. M. Digges failed and refused to pay the said E. A. Eaton the purchase price of said grain or any part thereof; that because of the refusal and failure of said R. M. Digges to accept said grain and pay said E. A. Eaton therefor he was compelled to sell the same to another person for the sum of $8,041.37, which was the highest and best price obtainable for said grain; that if the defendant had purchased the grain as he agreed to do said E. A. Eaton would have received therefor the sum of ten thousand dollars; that on the twenty-second day of September, 1910, said E. A. Eaton duly assigned and transferred to plaintiff his claim and demand for the damages resulting to him by reason of the defendant's breach of the contract.

The defendant insists that his demurrer should have been sustained because plaintiff's complaint does not in so many words allege that the defendant did not pay the purchase price of the grain contracted for. This contention is based upon the general rule of pleading which required that the plaintiff, in an action based simply upon the breach of a con-

tract to pay money, should allege or show that the contract in suit has actually been breached by a failure to pay. This rule is founded upon the theory that the gist of the action is the failure to pay, and therefore must be alleged.

In the attempted application of this rule to the plaintiff's pleading in the present case counsel for the defendant cites to us a long line of decisions commencing with *Frisch* v. *Caler,* 21 Cal. 71, wherein it has been repeatedly held that the allegation that the defendant "has refused and still refuses to pay" is but a conclusion of the pleader and wholly insufficient as an allegation of nonpayment.

That the defendant ". . . refused to pay . . . the purchase price of said grain or any part thereof" is the allegation quoted and complained of by counsel for the defendant in the present case. It may be that this allegation as quoted would not survive the test of the rule declared in the cases cited. This quotation, however, omits a material part of the allegation of the complaint upon the subject of nonpayment which, when read in conjunction with other allegations of the complaint, may be fairly said to show and support the fact of nonpayment. The entire allegation of the plaintiff's complaint which purports to plead the fact of nonpayment reads as follows: "That said R. M. Digges failed and refused to accept said grain and to perform his agreement, and refused to pay said E. A. Eaton the purchase price of said grain or any part thereof." In addition to the foregoing the plaintiff's complaint alleged "That because of the refusal and failure of said R. M. Digges to accept said grain and to pay said E. A. Eaton therefor the agreed price said E. A. Eaton was compelled to sell said grain to another person."

It will thus be seen that the sum and substance of all the allegations of the plaintiff's complaint is that defendant not only refused but failed to pay "the purchase price of said grain or any part thereof." To fail means to leave unperformed, to omit, to neglect (Bouv. Law Dic.); and therefore the allegation that the defendant failed to pay was a direct allegation of nonpayment.

If ever there was any doubt in the mind of the defendant as to whether or not he was charged with nonpayment of the purchase price of the grain, that doubt must have been dispelled by a consideration of other allegations of the com-

plaint, which show that the grain, because of his failure to pay, was sold and delivered to another person.

Upon a careful perusal of the cases cited and relied upon by counsel for the defendant it will be observed that in some of them the defect in pleading the fact of nonpayment was pointed out by special demurrer. (*Roberts* v. *Treadwell,* 50 Cal. 520; *Scroufe* v. *Clay,* 71 Cal. 123, [11 Pac. 882]; *Richards* v. *Travelers' Ins. Co.,* 80 Cal. 506, [22 Pac. 939]; *Hurley* v. *Ryan,* 119 Cal. 72, [51 Pac. 20]; *Hawley* v. *Brownstone,* 123 Cal. 643, [56 Pac. 468]); and in many if not all of them it will be found that the conclusion of the pleader was not aided and reinforced, as happened in the present case, by other allegations showing and supporting, either directly or indirectly, the fact of nonpayment. (*Barney* v. *Vigoreaux,* 92 Cal. 631, [28 Pac. 678]; *Richards* v. *Travelers' Ins. Co.,* 80 Cal. 506, [22 Pac. 939]; *Hurley* v. *Ryan,* 119 Cal. 72, [51 Pac. 20].)

In short, it cannot be said in the present case that the complaint as a whole shows a total failure to plead the fact of nonpayment; and therefore the defect, if any, in the plaintiff's allegation of that fact was, in the absence of a special demurrer, cured by the judgment. (*Penrose* v. *Winter,* 135 Cal. 289, [67 Pac. 772].)

The defendant makes the further point that the complaint is fatally defective because it is not alleged therein that the plaintiff was the owner at the commencement of the action of the claim assigned to and sued on by him. In the absence of a demurrer specifically upon this objection the point will not be considered. (*Irish* v. *Sunderhaus,* 122 Cal. 308, [54 Pac. 1113]; *Krieger* v. *Feeny,* 14 Cal. App. 538, [112 Pac. 901].)

The defendant's demurrer, among other things, specified that the plaintiff's complaint was uncertain in this, that it did not allege the precise date upon which the grain was tendered to the defendant. The allegation of the complaint in this behalf is to the effect that such tender was made between April 15 and September 1, 1910. Assuming that the defendant was entitled to have the date of the alleged tender stated with greater particularity, it does not appear that the failure to do so resulted in any substantial injury or disadvantage to the defendant in the preparation and presenta-

tion of his pleading and evidence in defense of the action. This being so, it must be held, after judgment rendered upon the facts, that the error, if any, in overruling the demurrer in the particular stated was harmless. (*Huffner* v. *Sawday,* 153 Cal. 86, [94 Pac. 424] ; *Krieger* v. *Feeny,* 14 Cal. App. 538, [112 Pac. 901].)

The sufficiency of the evidence to support the verdict and judgment is disputed by the defendant. The contention in this instance is that the plaintiff's evidence failed to show that the grain contracted for had actually been delivered to the defendant before the expiration of the time expressed in the contract. The evidence adduced upon the trial on the subject of delivery is in substance as follows: In due season, subsequent to the execution of the contract in controversy, plaintiff's assignor procured five hundred tons of barley of the grade called for, and stored the same in separate lots in several warehouses located at different points in the Salinas Valley. In the month of July plaintiff's assignor notified defendant that the grain was ready for delivery, and tendered him the warehouse receipts therefor. The defendant, however, refused to accept said grain at this time, claiming that he was not compelled to do so by the terms of the contract until the last day of August, 1910. Thereafter plaintiff's assignor, apparently for the purpose of avoiding any future controversy arising out of a construction of the contract, assembled and stored the five hundred tons of grain in a warehouse at San Lucas in the Salinas Valley, Monterey County, from which point the freight rate to San Francisco was three dollars per ton. The assembling of the grain at San Lucas was completed on the twenty-ninth day of August, 1910, whereupon plaintiff's assignor gave negotiable warehouse receipts for the grain to a Mr. Walker, with instructions to deliver them to the defendant upon the payment of the purchase price of the grain. Walker made diligent inquiry and search for the defendant, but at this time he could not be found at his home in King City nor elsewhere in Monterey County because of his absence in San Francisco.. Being unable to locate the defendant in person plaintiff's assignor immediately caused a written and signed notice to be left with the person in charge of the defendant's residence wherein he was notified that the grain contracted for was in the ware-

house of the Southern Pacific Milling Company at San Lucas; that negotiable warehouse receipts properly indorsed, covering the amount and grade of grain called for were in the possession of C. E. Walker of King City, the home of the defendant; that upon payment of the purchase price of the grain these warehouse receipts would be delivered to him or to his order. This notice concluded with the clause that "The grade of barley is the same as purchased by you, and you will find everything just as our agreement required." At the same time that this notice was left at the house of the defendant a duplicate thereof, addressed to him, was deposited in the United States post-office at King City, and in due course of mail was received by him. The defendant returned from San Francisco to his home in King City about 9 o'clock on the night of August 31, 1910, and on the following morning the above mentioned notice was handed to him by his sister-in-law, who had received it from the plaintiff's assignor.

Under these circumstances it is idle to contend that the plaintiff's assignor made neither a timely tender of delivery nor a valid offer to perform.

The transfer of negotiable warehouse receipts is a symbolical delivery of the goods called for by them, and passes the title thereto as effectually as if an actual delivery had been made. (Civ. Code sec. 1858b.)

It will not be disputed that the defendant was entitled to an opportunity to inspect the grain before accepting the same and paying the price therefor. This, however, he was invited to do by the very terms of the notice which was left at his residence and also mailed to him. Inasmuch as the contract in controversy failed to designate the particular warehouse in which the grain was to be assembled it must be conceded that the defendant was entitled to notice of the time and place at which delivery would be made a reasonable time in advance thereof. It may also be conceded that the giving of such notice prior to the expiration of the time limited in the contract was essential to a proper performance of the contract. Such notice, however, was, we think, given within the time limited in the contract, and sufficiently in advance of the day fixed for delivery to have afforded the defendant a reasonable opportunity for inspection before acceptance and payment. Under defendant's own construction of the contract he was

not compelled to accept delivery until the very last day mentioned therein. Acquiescing in this construction plaintiff's assignor fixed August 31, 1910, as the date upon which delivery would be made, and some two or three days prior thereto diligently and in good faith sought the defendant for the purpose of making a tender of delivery and giving notice of the time and place fixed therefor. Failing to find the defendant plaintiff's assignor employed the only means available to him for making a tender of delivery and giving the notice required. Whether the defendant's absence from his home was intentional or otherwise is of no consequence. In either event plaintiff's assignor was justified in employing the method he did of notifying defendant of the time and place fixed for delivery and making tender thereof. That such tender and notification was not received until after the expiration of the time limited by the contract was the fault of the defendant and not the neglect of plaintiff's assignor, and therefore the defendant will not be heard to complain. (Civ. Code, secs. 1511, 1512.)

Complaint is made of certain rulings of the trial court upon the admission and rejection of evidence. It will suffice for us to say that we have considered the points made in this behalf, and upon an examination of the record find that they are not well taken.

It is insisted that the trial court instructed the jury that "there is only one tender, and that is August 31st, 1910." This contention is not warranted by the record. The language quoted was not contained in any charge to the jury, but is to be found in the trial court's remarks in ruling upon an objection. That it was not intended for or considered by the jury is plainly apparent; and when read in connection with all that was said by the trial court it is equally clear that the court was not expressing an opinion upon any question of fact in issue in the case.

We are satisfied that the defendant's requested instructions were properly refused, and that upon the whole the case was fairly tried and justly determined.

The judgment and order appealed from are affirmed.

Hall, J. and Murphey, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1913.