[Civ. No. 4357.   First Appellate District, Division Two.—December 26, 1922.]

## WELLS FARGO NEVADA NATIONAL BANK OF SAN FRANCISCO (a National Banking Association), Appellant, *v.* HASLETT WAREHOUSE COMPANY (a Corporation), Respondent.

[1] WAREHOUSES—RECEIPTS FOR GOODS IN UNITED STATES BONDED WAREHOUSE—MANNER OF RELEASE—NOTICE.—All persons holding or receiving receipts which show on their face that they are issued for goods in a United States bonded warehouse have notice that the goods are subject to the control of the collector of customs with respect to their release and subject to the rules and regulations issued by the secretary of the treasury for the government and control of bonded warehouses and goods stored therein.

[2] ID.—CUSTODIANS OF GOODS IN BONDED WAREHOUSES.—Goods received in a government bonded warehouse are in the joint custody of the collector and the warehouseman.

[3] ID.—REGULATIONS GOVERNING BONDED WAREHOUSES—POWER OF SECRETARY OF TREASURY.—The secretary of the treasury is empowered to establish rules and regulations governing bonded warehouses, and such rules and regulations have the force of law.

[4] ID.—INDORSEE OF NEGOTIABLE WAREHOUSE RECEIPT—NOTICE OF TREASURY REGULATIONS.—The indorsee of a negotiable warehouse receipt is bound to take notice of the treasury regulations and the law applicable to bonded warehouses.

[5] ID.—DELIVERY OF GOODS FROM BONDED WAREHOUSE—PERMIT OF COLLECTOR OF CUSTOMS.—Goods in a United States bonded warehouse cannot be delivered except upon the presentation of a permit to the storekeeper signed by the collector of customs or his authorized deputy.

[6] ID.—ISSUANCE OF RECEIPT—TITLE NOT GUARANTEED.—The issuance of a negotiable receipt by a bonded warehouse showing that goods are actually held by it as the property of a certain party does not, of itself, constitute a guarantee that title is in such party.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   George E. Crothers, Judge.   Affirmed.

60 Cal. App.—15

The facts are stated in the opinion of the court.

Raymond Perry and John S. Partridge for Appellant.

Breuner & Erb, C. W. Durbrow and John Breuner, Jr., for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it in an action brought against the defendants to recover $32,507 damages for failure to deliver 100 cases of egg albumen, stored in the defendant's warehouse, for which plaintiff had purchased a negotiable warehouse receipt, for value, and without notice of any adverse claims to the goods.

The trial court found that on December 11, 1919, the collector of customs of the port of San Francisco ordered 100 cases of dried egg albumen to be stored as unclaimed goods in Humboldt bonded warehouse, a warehouse owned and operated by defendant as a class 3 warehouse, as classified under and by virtue of the provisions of the customs regulations duly made by the secretary of the treasury for the regulation of United States bonded warehouses, and that on or about the said eleventh day of December, 1919, defendant received said goods in said warehouse; that on or about the twenty-fourth day of December, 1919, the said goods were entered by the said collector of customs in the name of and as the property of one T. N. Morris, and that defendant thereupon, and by virtue of such entry, entered said goods at said warehouse in the name of and as the property of said T. N. Morris; that on or about the sixth day of January, 1920, H. W. Gutte & Company presented to defendant an order for the delivery of said goods to said H. W. Gutte & Company, Inc., duly executed by said T. N. Morris, and on said date defendant issued a negotiable warehouse receipt for said goods to said H. W. Gutte & Company, Inc., and said receipt provided, and it so appeared upon the face of the receipt, that the said goods were received by defendant in storage in said Humboldt bonded warehouse.

On January 7, 1920, Gutte & Company indorsed and delivered the said negotiable warehouse receipt to Kockos Brothers, who purchased the same in good faith and for value

without notice of any fact that might cause it to be dis-
honored. Kockos Brothers, in turn, indorsed and delivered
said negotiable warehouse receipt to plaintiff, who purchased
it in good faith and for value. On February 17, 1920,
plaintiff surrendered said negotiable receipt to defendant in
exchange for a non-negotiable warehouse receipt for the
same goods, which non-negotiable receipt stated that it was
given for goods in storage in Humboldt bonded warehouse.
On February 17, 1920, the plaintiff gave to Kockos Brothers
an order allowing them to withdraw 50 cases of the 100
cases of egg albumen mentioned in the warehouse receipts.

Prior to the issuance of either of the warehouse receipts,
to wit, on January 2, 1920, a permit for the withdrawal of
said goods was filed by the said T. N. Morris with the said
collector of customs and upon the said withdrawal permit,
the said T. N. Morris ordered the delivery of said goods
to be made to Kockos Brothers. On February 18, 1920,
Kockos Brothers paid the customs duties upon said goods
and the said withdrawal permit was thereupon stamped
"Duty Paid" and the United States storekeeper at said
Humboldt bonded warehouse was authorized by the collector
of customs to release said goods, which authorization was
in writing upon the face of said withdrawal permit. On
February 18, 1920, the said withdrawal permit, together with
an order for the delivery of 50 cases of said egg albumen,
was presented at the said Humboldt bonded warehouse and
the storekeeper of customs at said Humboldt bonded ware-
house, acting under instructions of the said collector of
customs, refused to deliver the said 50 cases of egg albumen,
or any part thereof.

At the time said documents were presented at said ware-
house defendant had information that plaintiff was not law-
fully entitled to the possession of said goods and that the
person or persons lawfully entitled to the possession of said
goods were Christenson, Hanify & Weatherwax, a copartner-
ship, or some person or persons for whom the said co-
partnership was acting. The firm of Christenson, Hanify
& Weatherwax was brought into the case by order of court
and the evidence demonstrated its right to the goods as
agent of the owner.

Shortly after the eighteenth day of February, 1920, the
said withdrawal permit was surrendered to the collector of

customs who thereupon refunded the customs duties to said Kockos Brothers and canceled the "Duty Paid" stamp theretofore stamped on said permit, and the collector of customs has issued no further withdrawal permit, either to the said Kockos Brothers or to the plaintiff herein.

The defendant claims no interest in the goods and is ready to deliver them upon the payment of the storage charges thereon if the collector of customs will authorize the release of said goods from the said bonded warehouse.

The trial court also found the following facts, which establish the contention relied upon by defendant as a defense to this action: Unless the goods in controversy be released from said bonded warehouse by said collector of customs, defendant is unable and cannot deliver said goods to plaintiff, because said goods are stored, as plaintiff well knew when purchasing the warehouse receipt therefor, in a United States bonded warehouse, and said goods are in the joint custody of defendant and the collector of customs and subject to the exclusive control of said collector with respect to the delivery of said goods and the release of said goods from said bonded warehouse; that defendant issued its warehouse receipts for said goods as and for goods received in said bonded warehouse and that all persons holding or receiving said receipts had notice by virtue of the provisions thereof and recitals therein, that said goods were in storage in a bonded warehouse and subject to the control of said collector and subject to the rules and regulations, duly made and issued by the secretary of the treasury, for the government and control of bonded warehouses and goods stored therein.

[1] Appellant contends that the refusal of the collector of customs to allow defendant to deliver the goods to plaintiff does not release defendant from liability, because plaintiff has been damaged by relying upon the negotiable warehouse receipt issued by the defendant. But it appears from the undisputed facts and from the findings of the trial court that the warehouse receipts showed on their face that they were issued for goods in a bonded warehouse. All persons holding or receiving said receipts had notice, therefore, that the goods were subject to the control of the collector of customs with respect to the release of said goods and subject to the rules and regulations issued by the secre-

tary of the treasury for the government and control of bonded warehouses and goods stored therein. [2] Goods received in a government bonded warehouse are in the joint custody of the collector and the warehouseman. The United States Revised Statutes declare that the proper officer of the customs and the owner and proprietor of the warehouse shall have joint custody of the merchandise stored in the warehouse. (U. S. Rev. Stats., sec. 2960 [2 Fed. Stats. Ann., p 1096; Comp. Stats. 1916, sec. 5644].) [3] The secretary of the treasury is empowered to establish rules and regulations governing bonded warehouses. (U. S. Rev. Stats., sec. 2989 [2 Fed. Stats. Ann., p. 1109; Comp. Stats. 1916, sec. 5682].) The treasury regulations have the force of law. (*United States* v. *Ehrgott,* 182 Fed. 267, 272.) The customs regulations of the secretary of the treasury, in so far as they are relevant to the issues of this case, were introduced in evidence. These regulations provide that all goods will be received and delivered by storekeepers or under their supervision, and that goods shall not be delivered from bonded warehouses except upon presentation of a permit to the storekeeper signed by the collector and naval officer, if any. [4] The case of *Bliss* v. *Carroll,* 2 Cal. Unrep. 595 [9 Pac. 88], holds that the indorsee of a negotiable warehouse receipt is bound to take notice of the treasury regulations and the law applicable to bonded warehouses.

[5] It follows, therefore, that the goods could not be delivered from the bonded warehouse except upon presentation of a permit to the storekeeper signed by the collector of customs or his authorized deputy. The evidence in the instant case is that the collector, by his deputy, refused to allow the goods to be delivered and so instructed the storekeeper in charge of the warehouse.

[6] The defendant makes no claim to the goods and the trial court has found that it is ready and willing to deliver the goods if permitted by the collector of customs to do so. The defendant did not guarantee that the collector of customs would permit the assignees of Morris to withdraw the goods. It merely issued a receipt showing that the goods were actually held by it as the property of Morris. But appellant contends that defendant thereby guaranteed

the title of Morris. We think the contention is without
merit. To hold that defendant guaranteed Morris' title by
issuing to him a negotiable receipt for the goods would mean
that if goods were stolen and placed in a warehouse by the
thief, and a negotiable receipt issued therefor, a purchaser
for value of such receipt could recover from the warehouse-
man after the real owner had secured possession of his
goods. The mere statement of the case demonstrates its
unsoundness. Assuredly, the purchaser of a negotiable ware-
house receipt representing merchandise can be in no better
position than a purchaser receiving actual possession of such
merchandise. In the latter case, the purchaser would take
no better title than his grantor, except where an estoppel of
the real owner was involved, an element that does not enter
into the present case. To put the matter more strongly,
let us suppose that the defendant and collector of customs
had delivered the goods to plaintiff before they had knowl-
edge of the superior claim of Christenson, Hanify & Weath-
erwax. This latter firm, representing the real owners, as
appears by the evidence, in the absence of any facts which
would estop it to assert its rights, could have recovered the
goods from plaintiff. In such an event, would plaintiff and
appellant contend that it could recover damages from the
defendant because its delivery of the goods upon Morris'
order constituted a guarantee of Morris' title? Assuredly,
it could not. Does appellant occupy a superior position
because it accepted a receipt for the goods from the de-
fendant, rather than the goods itself? We think not. The
transfer of a negotiable warehouse receipt is but a symbolic
delivery of the goods called for by it. (*Widemann Co.* v.
*Digges,* 21 Cal. App. 342 [131 Pac. 882].) The transfer of
such a receipt passes the title to the goods as effectually as
if the actual delivery had been made. (*Widemann Co.* v.
*Digges, supra.*) But it cannot pass title more effectually
than an actual delivery and if the defendant would not have
been liable to plaintiff in the case of an actual delivery of
the goods and a subsequent dispossession by the real owner,
it is not liable under the facts presented here.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1923.

All the Justices concurred.