[Civ. No. 11057. Second Appellate District, Division Two.—October 7, 1936.]

THE HOME INSURANCE COMPANY OF NEW YORK (a Corporation), Appellant, v. LOS ANGELES WAREHOUSE COMPANY (a Corporation), Respondent.

Hindman & Davis and W. H. Abrams for Appellant.

Hewitt & Anderson, C. H. Hartke, Sherman Anderson and Leslie R. Hewitt for Respondent.

WOOD, J.—Plaintiff appeals from a judgment of nonsuit. Plaintiff's assignor, Coca Cola Company, stored 42,645 bags of sugar in the warehouse conducted by defendant on the premises designated as 316 Commercial Street and 324 North San Pedro Street in the city of Los Angeles. A fire occurred in the warehouse on August 4, 1930, and the sugar was damaged. Some of the bags were totally destroyed and the balance delivered to plaintiff's assignor in a damaged condition. Plaintiff's complaint is in three counts, the first being for conversion, the second charging negligence on the part of defendant in storing fireworks in close proximity to the sugar and the third count charging that defendant permitted a nuisance to be maintained on that part of the premises that had been leased to the owner of the fireworks. Defendant denied the allegations of the complaint and pleaded the failure of plaintiff's assignor to present a written claim of loss or damage within thirty days after delivery of the sugar from the warehouse. At the trial plaintiff presented proof concerning the storage of the sugar and the fireworks and the cause of the fire. The parties entered into a written stipulation covering many of the facts, including the stipulation that neither plaintiff nor its assignor presented a claim in writing for loss or damage within thirty days or at any time prior to the date of the commencement of the action, February 3, 1933. It was also stipulated that at the time of the storage of the sugar plaintiff's assignor received from defendant a negotiable warehouse receipt in which defendant acknowledged receipt of the sugar "subject to all the terms and conditions contained herein and on the reverse hereof". On the reverse side of the receipt the following appears: "These goods are stored and handled subject to the rules, regulations, rates and charges as published in our warehouse schedules, on file with the Railroad Commission of California

and in our office, and such amendments thereto as may hereafter be filed.'' Paragraph IX of the stipulation provides in part as follows: ''That prior to the storage of any of said sugar in said warehouse, and on or about the 7th day of June, 1928, the defendant Los Angeles Warehouse Company filed with the Railroad Commission of the State of California and in the form designated by the said Commission as provided by Section 14, Subdivision b, of the 'Public Utilities Act' of the State of California, a schedule showing all rates, charges and classifications for the storage of goods, wares and merchandise in its said warehouse, together with all rules, regulations, privileges and facilities which in any manner affected or related to such rates, charges or services. That said defendant Los Angeles Warehouse Company caused said schedule to be printed and kept the same open to public inspection in its office at said warehouse on the premises designated by the street number 316 Commercial Street, in the City of Los Angeles; that the said schedule is entitled 'Warehouse Tariff No. 7–A', and had been printed and was kept open to public inspection in said defendant's office at all times since the 7th day of June, 1928, including the period from July 8th, 1929, to July 26th, 1930, both dates inclusive, when the said sugar was delivered by said Coca Cola Co. for storage in defendant's said warehouse. That the said 'Tariff No. 7–A' is the tariff referred to in the warehouse receipts mentioned in Paragraph IV of this stipulation, and that the rules and regulations contained and set forth in said Warehouse Tariff No. 7–A contain, among other things, the following provisions: . . . As a condition precedent to recovery, claims for loss or damage must be made in writing within thirty days after the merchandise is delivered from warehouse, or, in the case of failure to make delivery, then within thirty days after delivery of the last package of the lot in warehousemen's apparent possession.'' Plaintiff did not present any evidence to excuse its failure to present a written claim within the thirty days specified.

The warehouse receipt was the contract between the parties. In *Taussig* v. *Bode and Haslett*, 134 Cal. 260 [66 Pac. 259, 86 Am. St. Rep. 250, 54 L. R. A. 774], there was printed in small type on the side of the warehouse

receipt: "This receipt is given in accordance with the California warehouse laws, as well as the laws of the United States. Loss or damage by fire, the elements, shrinkage, leakage, or natural decay, at owners risk." The court stated: "Their acceptance of the receipt and storage of the goods with knowledge of this condition made it binding upon them, as one of the terms of the contract." Section 3 of the Warehouse Receipts Act (Deering's Gen. Laws, 1931, vol. III, Act 9059, p. 4975) provides: "A warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not—(a) Be contrary to the provisions of this act. (b) In anywise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." Section 14–b of the Public Utilities Act (Deering's Gen. Laws, 1931, vol. II, Act 6386, p. 3522) provides: "Under such rules and regulations as the commission may prescribe, every public utility other than a common carrier shall file with the commission within such time and in such form as the commission may designate, and shall print and keep open to public inspection schedules showing all rates, tolls, rentals, charges and classifications collected or enforced, or to be collected or enforced, together with all rules, regulations, contracts, privileges and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service." Defendant is a public utility and as such was required to file its rules and regulations which in any manner affect or relate to rates or service. The rules and regulations filed by defendant by which it is required that written claims must be filed within thirty days undoubtedly relate to and affect the service. Since the sugar was stored subject to the rules and regulations on file, the provisions of the rules and regulations become part of the contract between the parties. The provision requiring the prompt presentation of a written claim is reasonable. It is designed to give a warehouseman timely opportunity to ascertain the facts concerning the asserted loss.

The Supreme Court of the United States has in a number of decisions held valid provisions requiring the presentation of claims within the periods provided by contract. In

*Erie Ry. Co.* v. *Stone,* 244 U. S. 332 [37 Sup. Ct. 633, 61 L. Ed. 1173], an agreement providing that a written claim for damages to horses being shipped must be presented within five days was upheld. In *Gooch* v. *Oregon Short Line R. Co.,* 258 U. S. 22 [42 Sup. Ct. 192, 66 L. Ed. 443], an agreement requiring claimant to file his written claim within thirty days in the case of a drover who suffered personal injuries while acting as caretaker for cattle in shipment was upheld. In *Southern Express Co.* v. *Caldwell,* 21 Wall. 264 [22 L. Ed. 556], the court, speaking through Mr. Justice Holmes, stated: "It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the Statute of Limitations. He is only required to make his claim within ninety days, in season to enable the carrier to ascertain what the facts are, and having made his claim, he may delay his suit. It may also be remarked that the contract is not a stipulation for exemption from responsibility for the defendants' negligence, or for that of their servants. It is freely conceded that had it been such, it would have been against the policy of the law, and inoperative. Such was our opinion in *New York C. R. Co.* v. *Lockwood* (17 Wall. 357 [21 L. Ed. 627]). A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence and of capacity, which the strictest rules of the common law ever required."

In *Cudahy Packing Co.* v. *Munson S. S. Line,* 22 Fed. (2d) 898, Circuit Court of Appeals, Second Circuit, the plaintiff's cause of action was founded upon alleged negligence of the defendant as a common carrier in failing promptly to unload a shipment of hams at Havana. The plaintiff delivered the hams to the Illinois Central Railroad in Iowa for shipment to Havana by way of Mobile. The through bill of lading issued by the Illinois Central

Railroad contained a provision making the bill of lading subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company. The regular forms of bills of lading of the steamship company provided: ''The carrier shall not, in any event, be liable for any claim or demand arising hereunder or in respect of the goods, unless notice of the claim be presented in writing to the carrier within thirty days after delivery of the goods to the carrier.'' At the close of the case the trial judge directed a verdict for the defendant on the ground that the plaintiff had failed to prove notice of claim as required by the bill of lading. In upholding the judgment the reviewing court stated: ''The requirement that notice be given by the shipper imposes an affirmative duty on him, and makes him in respect to it an actor . . . If plaintiff had sued on the bills of lading instead of in tort sur case, it would have been obliged under the Goethals decision to allege and prove the giving of notice or some excuse for failure to give it. This burden of proof cannot be avoided by suing in tort. When the defendant set up the terms of the bill of lading, which are not disputed, the plaintiff had to prove everything necessary to establish a breach . . . But it seems established that the provisions in the ocean bills of lading referred to in the through bill of lading were part of the contract of which the shipper was chargeable with notice.'' In *Brennan Packing Co.* v. *Cosmopolitan Shipping Co. et al.*, 14 Fed. (2d) 971, the plaintiff shipped goods from Chicago by rail and thence to Europe by steamship. The railroad company issued a bill of lading in which it was provided: ''That the property covered by this bill of lading is subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company at time of shipment.'' The ocean bill of lading contained a provision that the carrier should not be liable for any claims unless certain prescribed written notice should be given to the carrier. The plaintiff did not comply with the provisions of the ocean bill of lading relative to serving notice of claim of damage. In deciding for the defendant the court stated: ''I am of the opinion not only that the provision for notice of claim and bringing of suit for damages was reasonable and not against public policy,

but also that the libelant carried the burden of proving compliance therewith as a condition precedent to recovery. *The Sagadahoc,* (D. C.) 291 Fed. 920. Notwithstanding this burden, libelant has neither complied with the provisions of the bills of lading, nor attempted in any way to excuse its failure so to do.''

The contention of defendant is in harmony with California decisions. In *Breuner Co.* v. *Western Union Tel. Co.,* 108 Cal. App. 243 [291 Pac. 445], the plaintiff sought to recover the sum of $1,000 which had been paid to a party in Orange, New Jersey, whereas the instructions were to pay the sum mentioned at Atlantic City in New Jersey. The money was paid to an impostor. For the purposes of this reference all of the complicated details of the case need not be here set forth. The defendant delivered to the plaintiff a receipt for the money stating that it was received ''subject to the terms and conditions of money transfer of this date''. The defendant telegraph company had adopted and caused to be printed and issued to all of its money transfer offices throughout the United States its ''book of rules of money transfer instructions to its agents and employees''. This book was in use at all telegraph money transfer offices but it was not shown to the representative of plaintiff, who had no actual knowledge of the book of rules or of any of its contents. The reviewing court held that defendant had breached its contract in making payment at Orange but decided in favor of defendant for the reason ''that the changed place of payment, under the facts of this case, was not the proximate cause of plaintiff's loss''. In holding that the plaintiff was bound by the rules and regulations of the defendant company the court stated: ''Appellant, on the other hand, contends that the contract, as evidenced by the application and receipt, was and should be construed only with reference to the rules and regulations of the defendant company, as admittedly existing. We are of the opinion that the authorities support the contention of the appellant in this respect. . . . Under the authorities hereinafter cited it is our conclusion that the rules of service are an inseparable part of the public service regulated and to be rendered, and that when one contracts or contracts with such public servant the rules governing necessarily become a part

of the contract from which neither of the parties may deviate. . . . Respondent argues that, admitting the service to be regulated and controlled by the rules, nevertheless one dealing with the Telegraph Company is not presumed to know the rules and is not chargeable with any knowledge thereof. This contention is likewise fully answered in the cited cases and to the contrary of the claim made by respondent. . . . And to put the public service dependent upon the proof of actual knowledge of every rule properly adopted as regulatory of the service would eventually narrow and restrict the utility to limitations seriously hampering its efficiency . . . From the foregoing it is manifestly our conclusion that when plaintiff delivered for transfer the funds in question, it did so mindful of the rules of service adopted by the defendant Telegraph Company and that these rules entered into and became an integral part of the contract.''

In *Forest Lawn M. P. Assn.* v. *De Jarnette,* 79 Cal. App. 601 [250 Pac. 581], the defendant purchased by contract a burial lot in the plaintiff's cemetery. One of the plaintiff's rules provided that those interred in the cemetery should be of the Caucasian race. The contract provided that the premises were accepted by the purchaser subject to the rules and regulations in force and that ''it is expressly agreed that this contract contains and embodies all the terms and conditions to be performed''. The plaintiff sued to rescind the contract on the ground that the defendant was of the Negro race and that the plaintiff had no knowledge of this fact when the contract was executed. Judgment for the plaintiff was affirmed, the court saying: ''Appellant contends that she had a right to rely upon the provision that 'this contract contains and embodies all the terms and conditions to be performed by the parties hereto'. The answer is that one of the terms of the contract provides: 'Said premises to be conveyed to and accepted by the purchaser subject to the rules and regulations now in force and such as may hereafter be adopted.' By such reference the rules and regulations were made a part of the contract.'' (See, also, *Wells Fargo etc. Bank* v. *Haslett W. Co.,* 60 Cal. App. 225 [212 Pac. 647].)

Our disposition of the issue above discussed makes it unnecessary to pass upon other points argued in the briefs. The judgment is affirmed.

Crail, P. J., and McComb, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 4, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 3, 1936. Thompson, J., and Edmonds, J., voted for a hearing.