**PHILLIPS BROTHERS, DIVISION OF ENGELHARD MINERAL & CHEMICAL CO., and Derby & Co., Inc., Appellants,**

v.

**LOCUST INDUSTRIES, INC., Appellee.**

### No. 84–1361.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 29, 1984.

Decided Feb. 14, 1985.

James D. Skeen, Baltimore, Md. (Constable, Alexander, Daneker & Skeen, Baltimore, Md., on brief), for appellants.

Robert J. Kopka, Chicago, Ill. (John F. Horvath, Chicago, Ill., John I. Tigert, VI, Washington, D.C., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge.

Plaintiffs, Phillips Brothers and Derby, appeal from the granting of motions for summary judgment by defendant, Locust Industries, Inc. Locust Industries is a warehouseman which acted as a bailee for two separate shipments of nickel owned by plaintiffs. Plaintiffs brought this action for negligence, breach of contract, and conversion after Locust discovered that portions of each shipment had been stolen. The trial judge granted Locust's motions for summary judgment on all three causes of action. We affirm.

**I**

Plaintiffs were the bailors of 268 pallets of nickel briquettes and 62 pallets of nickel cadmium which they purchased and had shipped to the Locust warehouse. Locust received the first shipment during October and November 1977 and the second during January 1978. Upon the receipt of each shipment Locust issued and mailed a non-negotiable warehouse receipt to plaintiffs.

Both receipts were identical and contained a clause limiting the time and manner of presenting a claim and also of instituting a suit against the warehouse:

—Sec. 10...

(b) Claims by the depositor must be presented in writing within a reasonable time, and in no event longer than 60 days after delivery of the goods. No action may be maintained by the depositor against the warehouseman for loss or damage to goods covered hereunder unless commenced within nine months next after date of delivery by the warehouseman.

In early January 1978, an informant gave the United States Customs Service detailed information concerning thefts from the Locust warehouse. These thefts included some of plaintiffs' nickel. Although agents for the United States Customs began weekend surveillance of the warehouse, they apparently did not inform Locust of either the thefts or their surveillance.

On February 23, 1978, Locust discovered that approximately 7,000 pounds of nickel cathodes from the second shipment were missing. Locust conducted an investigation and notified plaintiffs of the loss by telephone and by letter dated March 20, 1978. Locust also counted the first shipment but discovered no missing nickel.

These investigations confirmed the informant's version of how the nickel was stolen but did not lead to any indictments for the theft of any nickel. Indictments were issued against three individuals for the theft of some wicker furniture. These indictments were ultimately dismissed by an Assistant U.S. Attorney because the evidence was insufficient to convict the individuals.

On June 16, 1978, Locust discovered that three boxes of nickel briquettes from the first shipment had been opened from the back and the nickel removed. Approximately 8,000 pounds of nickel were missing. Locust notified plaintiffs of this loss on July 10, 1978.

Locust told plaintiffs that the United States Customs Service was investigating the losses and that plaintiffs should file a claim with their property insurer. Plaintiffs did not file a claim with Locust. They did, however, file a lawsuit on September 24, 1980. This date was over 27 months after Locust had notified plaintiffs of the second loss and over 17 months after the contractual limitations period had expired.

The suit was in negligence, breach of contract, and conversion. The answer asserted the contractual time limitations as an affirmative defense. Both parties filed motions for summary judgment. On April 23, 1983, the trial judge denied plaintiffs' motions but granted Locust's motion on the negligence and breach of contract causes of action. The trial judge held that the limitation period had expired and that these

two actions were time barred. The trial judge denied Locust's motion for summary judgment on the cause of action for conversion at that time. On March 22, 1984, the trial judge granted Locust's motion as to the conversion cause of action. The trial court ruled that, although there was a presumption of conversion, the warehouseman need not prove what actually happened to the nickel to rebut that presumption. The court found that Locust had successfully rebutted the presumption of conversion and that plaintiffs had to prove the elements of conversion at trial. Because plaintiffs admitted they would be unable to do so, the trial judge granted the summary judgment motion.

Of the issues raised on appeal we need only to discuss two: (1) whether plaintiffs accepted the time limitation found in the warehouse receipt and (2) whether that time limitation is a bar to all three causes of action.

## II

■ Plaintiffs' argument that they did not accept the time limitation found in the warehouse receipt is without merit. Plaintiffs allege that their negotiations with Locust did not include any discussions of the limitations of liability found in the warehouse receipt. Thus, plaintiffs contend that there was no meeting of the minds between the parties over what they argue is an essential term of the warehouse receipt.

Furthermore, plaintiffs allege that the nickel was under Locust's control before plaintiffs received the warehouse receipts. They argue that a contract *without* the limitations of liability was created when Locust took control of the nickel. Locust then sent them the warehouse receipts which contained the terms limiting Locust's liability. Plaintiffs argue that these terms materially altered the contract and, because they did not accept them, are not part of the contract. For their arguments plaintiffs rely on *Md.Com.Law Code Ann.* § 2–207(2)(b) (1975).

Plaintiffs, however, ignore Comments 3, 5, and 6 to § 2–207. Comment 3 states that if additional or different terms "are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time." Comment 5 gives examples of terms which must be objected to.

Under Comment 5 clauses which limit remedies in a reasonable manner or clauses which fix a reasonable time for complaints in a customary manner are clauses "which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given." *Compare Md. Com.Law Code Ann.* § 2–207. Comment 5 *with* Comment 4 (a clause requiring that complaints be made in a time materially shorter than customary or reasonable is a clause which would " 'materially alter' the contract and so result in surprise or hardship if incorporated without express awareness by the other party"). Limitations on liability, such as those found in § 10b of the warehouse receipt are expressly authorized by the Maryland legislature. *Md. Com.Law Code Ann.* § 7–204(3) (1975). These particular time limitations are customary and reasonable. Section 10b does not require that complaints be made in a materially shorter time than customary or reasonable. Furthermore, plaintiffs admit in their brief that they were aware that warehousemen have a practice of putting limitations in their warehouse receipts. Also, plaintiffs are experienced and knowledgeable businesses with a history of dealing with warehousemen, including Locust and with warehouse receipts.

Finally, Comment 6 states, "If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to." Plaintiffs made no answer after receiving either of the warehouse receipts.

For these reasons the terms in § 10b limiting Locust's liability are a valid part of the warehouse receipt.

## III

■ Section 7–204(3) of the Commercial Law Code of Maryland states:

(3) Reasonable provisions as to the time and manner of presenting claims and instituting actions based on the bailment may be included in the warehouse receipt or tariff.

Relying on this statute, Locust included § 10b in its warehouse receipt. Under § 10b of the warehouse receipt a bailor must file any claim against the bailee within sixty days from the date the goods are delivered by the bailee and must file any action against the bailee within nine months of delivery.

Because of this time limitation, the trial judge granted summary judgment as to the negligence and breach of contract causes of action. Locust notified plaintiffs of the second loss on July 10, 1978. Plaintiffs' insurance carrier filed a claim in December 1979, well beyond the 60–day limit. This action was brought in September 1980, almost a year and a half beyond the nine month limit.

Plaintiffs argue that § 10b is inapplicable to the facts of this case because it is totally ambiguous. They contend that it is impossible to determine from a plain reading of § 10b when the limitation's period begins to run because § 10b refers to "delivery" of the goods. In this case there was no "delivery" because the goods were lost. Since there was no delivery there was no date from which the time limitation could begin to run. Therefore, under Appellants' reasoning, § 10b is inoperable.

This is an unreasonable interpretation of § 10b because it ignores the specific language of § 10b making it applicable to lost goods. Obviously, in the case of lost goods there can be no delivery. Therefore, the limitations period begins to run when the bailee notifies the bailor that the goods are lost and that delivery is impossible. The limitation period begins to run at that time

because the bailor then knows that he must notify the bailee of his intention to file a claim to conform with the terms of the warehouse receipt.

■ Although this particular issue has not been previously addressed in Maryland, this same limitation has been enforced in several other cases involving lost goods. *See Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 575 F.Supp. 971 (N.D.Ill., E.D., 1983); *Strom International, Ltd. v. Spar Warehouse and Distributors, Inc.*, 69 Ill.App.3d 696, 26 Ill.Dec. 484, 488, 388 N.E.2d 108, 112 (1979); *see also Upjohn Co. v. Timpany*, 168 N.J.Super. 283, 402 A.2d 979, 983 (1979) (the U.C.C. "specifically countenances the insertion of a foreshortened period for presenting claims in a warehouse receipt"). In *Refrigeration Sales Co.*, the district judge dismissed the two causes of action for negligence and breach of contract based on the warehouse receipt. Similarly, in this case the district judge correctly dismissed the two causes of action for negligence and breach of contract based on the § 10b of the warehouse receipt.

■ In this case the trial judge also dismissed the cause of action for conversion. We affirm this dismissal, but for a reason different from that relied upon by the trial judge.

Section 7–204(2) of the Commercial Law Code of Maryland allows a bailee to limit the amount of his liability for lost or damaged goods. This section contains a provision which states, "No such limitation is effective with respect to the warehouseman's liability for conversion to his own use." The trial judge read this provision into § 7–204(3) which allows the bailee to limit the time and manner of presenting claims and instituting actions. The trial judge then held that § 10b of the warehouse receipt was inapplicable to the cause of action for conversion and this was error.

Under the Maryland rules of statutory construction, *see, e.g., Board of Education of Garrett County v. Lendo*, 295 Md. 55, 453 A.2d 1185 (1982), the provision found in

§ 7–204(2) cannot be read into § 7–204(3). The Maryland legislature specifically excluded the applicability of damages limitations in conversion cases but did not exclude the applicability of time limitations in conversion cases. The intent of the legislature clearly was not to restrict § 7–204(3). Under established principles of statutory construction, as well as the plain language, the legislature's omission of the exception from § 7–204(3) must be viewed as intentional. *See Refrigeration Sales Co.,* 575 F.Supp. at 974–75. Because plaintiffs filed neither their claim nor this action within the applicable time limitation, the cause of action for conversion must be dismissed.

We have considered plaintiffs' other arguments and find them to be without merit. The decision of the trial judge dismissing the causes of action for negligence and breach of contract is affirmed in accordance with the trial judge's reasoning. The decision of the trial judge in dismissing the cause of action for conversion is also affirmed for the reason stated above.

AFFIRMED.