REFRIGERATION SALES CO., INC.,
Plaintiff-Appellant,

v.

MITCHELL–JACKSON, INC., a corporation, and Alfred L. Jackson,
Defendants-Appellees.

No. 84–1081.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1985.

Decided Aug. 9, 1985.

Rehearing Denied Sept. 6, 1985.

Robert J. Slobig, Jerome H. Torshen, Ltd., Chicago, Ill., for plaintiff-appellant.

Peter A. Quilici, Conklin & Adler, Ltd., Chicago, Ill., for defendants-appellees.

Before ESCHBACH and POSNER, Circuit Judges, and GIBSON, Senior Circuit Judge.*

* Hon. Floyd R. Gibson of the Eighth Circuit, sitting by designation.

POSNER, Circuit Judge.

This is a diversity suit, governed by the law of Illinois, for the tort of conversion. The plaintiff is Refrigeration Sales Company, a distributor of refrigerant gases. The defendants are Mitchell-Jackson, Inc., which owns and operates a large warehouse in Chicago, and Alfred Jackson, who is the president of Mitchell-Jackson and directs its day-to-day operations.

Refrigeration Sales had stored cylinders of refrigerant gas in Mitchell-Jackson's warehouse for many years. Every time it received these cylinders Mitchell-Jackson would issue a warehouse receipt that contained the following provision, around which this lawsuit revolves:

> Claims by the depositor [i.e., Refrigeration Sales] must be presented in writing within a reasonable time, and in no event longer than 60 days after delivery of the goods. No action may be maintained by the depositor against the warehouseman for loss or damage to goods covered hereunder unless commenced within 12 months next after date of delivery by the warehouseman.

In 1976 the service provided by the warehouse began to deteriorate. Monthly storage bills were sent late. Inventory reports requested by Refrigeration Sales were not sent at all. In 1977 Alfred Jackson realized (but did not tell Refrigeration Sales) that there were discrepancies between his inventory records and the actual physical inventory of Refrigeration Sales' cylinders in the warehouse. Finally in July 1979 Refrigeration Sales sent the warehouse a certified letter directing it to transfer all of Refrigeration Sales' goods to another warehouse. In October and December Mitchell-Jackson transferred all the goods it could find to the other warehouse. What it sent, however, was unsalable because of contamination from having been stored in too close proximity to a particularly dirty product that Mitchell-Jackson had been storing for another customer; and some of what both parties' records showed as Refrigeration Sales' goods stored in the ware-

house were not included in the transfer. Alfred Jackson stated in his deposition that he thought cylinders that had leaked gas had been returned to Refrigeration Sales as empties without being taken off the warehouse's books.

In October 1981 Refrigeration Sales brought this suit for conversion of the unsalable and missing cylinders that had been stored in Mitchell-Jackson's warehouse, seeking $125,000 in damages (the market value of the goods). After some pretrial discovery the defendants moved for summary judgment on the ground that the suit was barred by the limitation-of-claims clause quoted earlier. The judge granted the motion and dismissed the suit, 575 F.Supp. 971 (N.D.Ill.1983), and Refrigeration Sales has appealed.

If the clause was valid and applicable to both defendants, this suit is barred, as the district court held. Refrigeration Sales brought suit almost two years after the last shipment of damaged goods. Of course there is some ambiguity in the notion of having to sue within 12 months of delivery when the goods are lost rather than merely damaged. The clause must mean, within 12 months after the warehouse delivers what it has and makes clear it has no more. In October 1979, when the first shipment of damaged goods was made, Refrigeration Sales knew it had a claim against Mitchell-Jackson yet did nothing, either then or for the two years until it brought this suit; and similarly it did nothing when it received another shipment of damaged goods in December. Certainly after another couple of months had passed it could no longer reasonably assume that the missing goods would show up; and certainly the damaged goods would not miraculously become undamaged. Either in December, or shortly afterward—but in no event within 12 months before this suit was brought in October 1981—Refrigeration Sales' cause of action for lost and damaged goods accrued and the 12-month limitations period began to run.

■ After the district court granted summary judgment for the defendants, Re-

frigeration Sales produced some affidavits indicating that the defendants may have lulled it into not claiming or suing earlier, by soothing assurances that Jackson was still looking for the rest of Refrigeration Sales' cylinders. But the district judge acted within his power in refusing to reopen the case on the basis of these belated submissions for which no excuse was offered. So we must assume that there is no factual basis for using the concept of equitable tolling (what Refrigeration Sales calls estoppel) to delay the accrual of the plaintiff's claim.

Refrigeration Sales does not argue that the limitation-of-claims clause is unconscionable or otherwise unenforceable. It could not so argue in the face of section 7–204(3) of the Uniform Commercial Code ("Reasonable provisions as to the time ... of ... instituting actions based on the bailment may be included in the warehouse receipt ..."), as it has been construed in the cases (one from Illinois). See *Strom Int'l, Ltd. v. Spar Warehouse & Distributors, Inc.*, 69 Ill.App.3d 696, 26 Ill.Dec. 484, 388 N.E.2d 108 (1979); *Phillips Bros. v. Locust Industries, Inc.*, 760 F.2d 523, 526 (4th Cir.1985); *Amenip Corp. v. Ultimate Distribution Systems, Inc.*, 200 N.J.Super. 109, 490 A.2d 371 (App.Div.1985); *Continental Metals Corp. v. Municipal Warehouse Co.*, 112 Misc.2d 923, 924, 447 N.Y. S.2d 849, 850 (Sup.Ct.1982), aff'd without opinion, 92 A.D.2d 477, 459 N.Y.S.2d 406 (1983); cf. *Home Ins. Co. of New York v. Los Angeles Warehouse Co.*, 16 Cal.App.2d 737, 61 P.2d 510 (1936). Section 7–204(3) is in any event merely declaratory of a general principle of contract law, on which see, e.g., 18 Williston on Contracts § 2070, at pp. 941–43 (3d ed. 1978). Refrigeration Sales argues, rather, that the clause is inapplicable to conversion, or if applicable unenforceable. Nothing on the face of the limitation—or, considering the close relationship between the loss of goods by negligence and their loss by conversion, in its apparent purpose—justifies such an exclusion. In Illinois the statute of limitations for damage to property, whether through

negligence or conversion, is the same (five years), Ill.Rev.Stat. ch. 110, ¶ 13–205, showing that there is no perception that victims of conversion ought to have more time to sue than victims of negligence, which is what Refrigeration Sales wants. Although the *Continental Metals* case, *supra,* 112 Misc.2d at 926, 447 N.Y.S.2d at 852, holds in the alternative that an attempt by a bailee to limit his liability for conversion in this way is unconscionable and therefore unenforceable, the recent and well-reasoned *Amenip* decision in New Jersey rejects this approach, pointing out that such a clause does not limit the bailee's liability but merely limits the time within which the bailor can bring suit to establish that liability. See also *Phillips Bros. v. Locust Industries, Inc., supra,* 760 F.2d at 526–27. The clause in *Amenip* was identical to the one here except that the period within which the bailee had to bring suit was only nine months, and here it is 12. (The clause in the *Phillips* case was the same.) Though we can find no Illinois case on point, we expect the Illinois courts will follow *Amenip.*

 But we need not rest our decision entirely on this necessarily rather speculative point. Even if the limitation clause is inapplicable to or unenforceable in a conversion case, a bailor may not get around a valid limitation on the period for bringing a negligence suit simply by renaming a suit for lost or damaged goods a suit for conversion. This is particularly clear with respect to the damaged as distinct from the lost goods. It is not that physical damage can never amount to conversion. If Mr. Jackson had in a rage smashed one of Refrigeration Sales' cylinders of refrigerant gas he would be guilty of conversion. See Prosser and Keeton on the Law of Torts 100 (5th ed. 1984). But no one suggests he did anything like that; it appears that he was careless in storing some of the cylinders too close to goods that were dirty, as well as in mislaying others. Thus, though called a complaint in conversion in order to defeat the limitation clause, the complaint states a classic claim for a bailee's negligent damage, not deliberate

taking, of goods entrusted to his possession—one of the earliest applications of the concept of negligence in English law, see 2 Blackstone, Commentaries on the Laws of England 452–54 (1766); Holmes, The Common Law 183, 196 (1881).

If Jackson had taken one of Refrigeration Sales' cylinders and sold it to someone else, that also and more obviously than in the case of malicious destruction would be conversion, but there is no evidence of that either. And there is no evidence that Jackson misdelivered the cylinders, which would also be conversion. See Restatement, Second, Torts § 234 and comment e (1965). The fact that Jackson was unable to produce all the goods shown on his records as belonging to Refrigeration Sales does not have the sinister implications that Refrigeration Sales would have us draw. Some of the missing (as distinct from damaged) goods may be mislaid somewhere in Mitchell-Jackson's large warehouse (upwards of 100,000 square feet), though this is speculation; the rest, as Jackson speculated in his deposition, may already have been returned to Refrigeration Sales and simply not have been taken off the parties' records of what is in storage. Refrigeration Sales' conflation of negligence and conversion is ironic given its insistence that they are different animals for purposes of applying the 12-month limitation clause.

Refrigeration Sales argues somewhat more persuasively that a totally unexplained disappearance should place on the bailee the burden of producing some evidence to explain it, failing which the bailee should be deemed a converter. There is a division of authority on the question, with many cases holding that an unexplained disappearance creates a presumption merely of negligence, and not of conversion. Cases supporting the presumption of conversion are illustrated by *I.C.C. Metals, Inc. v. Municipal Warehouse Co.,* 50 N.Y.2d 657, 431 N.Y.S.2d 372, 409 N.E.2d 849 (1980), and *Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co.,* 189 N.J. Super. 141, 458 A.2d 1341 (Law Div. 1983), and cases supporting the presump-

tion of negligence by *Lerner v. Brettschneider*, 123 Ariz. 152, 598 P.2d 515 (Ct.App. 1979); *Sanfisket, Inc. v. Atlantic Cold Storage Corp.*, 347 So.2d 647 (Fla.App. 1977), and *Adams v. Ryan & Christie Storage, Inc.*, 563 F.Supp. 409 (E.D.Pa.), aff'd without opinion, 725 F.2d 666 (3d Cir. 1983). Illinois has taken no position as yet. Language pointing both ways can be found in Illinois opinions, but in no case was conversion a possibility on the facts. Compare *Wall v. Airport Parking Co. of Chicago*, 88 Ill.App.2d 108, 232 N.E.2d 38 (1967), aff'd, 41 Ill.2d 506, 244 N.E.2d 190 (1969), and *Sampson v. Birkeland*, 63 Ill. App.2d 178, 211 N.E.2d 139 (1965), with *Race v. Chandler*, 15 Ill.App. 532 (1884). Usually it makes no difference to the outcome whether the bailee is guilty of conversion or negligence; hence we find cases like *National Resources Trading, Inc. v. Trans Freight Lines*, 766 F.2d 65, 69–70 (1985), which talks presumption of negligence but cites *Reinfeld*, a presumption-of-conversion case, and finds conversion.

As an original matter we would doubt the need to rely on presumptions, and in support would note the silence of the Uniform Commercial Code on the question, see White & Summers, Handbook of the Law Under the Uniform Commercial Code 789–91 (2d ed. 1980), and the implicit rejection of both presumptions in *Vandalia R.R. v. Upson Nut Co.*, 55 Ind.App. 252, 256–57, 101 N.E. 114, 115 (1913); see also *Inland Metals Refining Co. v. Marine Terminals, Inc.*, 557 F.Supp. 344, 347–49 (N.D.Ill.1983). A woman checks her mink coat at the checkroom of a restaurant, and when she presents her claim check an hour later the coat is gone and the restaurant's owner merely shrugs his shoulders. In the circumstances the likelihood that the owner had converted the coat, either by keeping it for himself or misdelivering it to another customer, and had not merely mislaid it, would be sufficient to establish a prima facie case of conversion; and no more seems necessary to protect the owner's interests. But where as in this case some commercial goods stored in a reputable warehouse are returned damaged and others are not returned at all, an inference of negligence seems more probable than one of conversion.

■ Even if a presumption of conversion is applied here, the defendants put in enough evidence in rebuttal (though barely enough in the case of the missing goods) to satisfy their burden of production. Jackson offered an explanation, not implausible in the circumstances—a large warehouse, a reputable owner, some goods returned damaged, a long course of dealing between the parties—for why the goods were missing. This satisfied any burden of production he had. In *I.C.C. Metals*, the leading case supporting the presumption of conversion from unexplained disappearance, the warehouse's owner speculated that his customer's property had been stolen by an employee of the warehouse, but the employee had not been charged with theft, so the explanation was found wanting. It may well be that the New York court placed too heavy a burden on the defendant. Still, the case is factually distinguishable from the present one. The missing property in *I.C.C. Metals* was indium, a rare metal, of which 845 pounds (in small easily portable ingots), worth $100,000, was missing. The defendant's failure to lodge a criminal complaint against the alleged thief was puzzling, to say the least, given the amount of the haul and the fact that the alleged thief had restored nothing of what he had taken. A suspicion of conversion was not stilled by an explanation that in the circumstances was so unpersuasive. No similar suspicion casts a shadow on Mr. Jackson's testimony.

■ Refrigeration Sales has also tried to get around the limitation-of-claims clause by suing Jackson directly, as well as his company, and noting that the clause limits the time within which the warehouse company itself, not its officers, may be sued. At first glance it might seem that Refrigeration Sales, in suing Jackson at all, was trying to circumvent the principle of limited liability in the law of corporations by suing an officer for the wrong done by

his corporation. But the principle of limited liability protects shareholders from having to dig into their pockets to make good the debts of the corporation, and is based on a policy of encouraging investment by enabling the investor to limit his risk to the amount of the investment. Jackson, at least in his role as president and chief operating officer of the warehouse, is not an investor; and if indeed he converted Refrigeration Sales' property, he is liable and cannot hide behind his agency role. *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill.App.3d 703, 706–07, 50 Ill.Dec. 120, 418 N.E.2d 1114, 1117 (1981). But there is no more evidence of conversion by Jackson than of conversion by Refrigeration Sales.

Thus we need not decide whether, if Jackson had been guilty of conversion—in which event he could not escape personal liability merely by pointing to his agency role—nevertheless he might be protected by the limitation clause even though he was not a party to it. This question becomes unavoidable however when we switch our focus from conversion to negligence. It might seem that since Jackson is not a party to the contract that contains the limitation clause, Refrigeration Sales can sue him, without regard to the clause, for his negligence in failing to keep track of its goods and in causing them to be contaminated by his decision to place them near dirty goods. But it would nullify the limitation clause to allow the bailor to sue the bailee's employee who had done the negligent acts causing loss or damage, without regard to the limitations that the clause places on suits against the bailee. Since a bailee's negligence will always be due to the negligent act of some employee (here, it seems, the negligence of Mr. Jackson), the bailor would always be able to sue someone, even if the limitation clause prevented him from suing the bailee, because the bailor had waited too long. The bailee would indemnify its employee for any judgment paid in such a suit, or if not would have to pay the employee a higher wage to compensate him for bearing the risk of such a suit, and either way the burden of the suit would come to rest on the bailee despite the limitation clause. The parties could not have intended that such an end run be permitted, and it is not permitted. See, e.g., *Revillon Freres v. Cassell Trucking Co.*, 24 A.D.2d 845, 264 N.Y.S.2d 24 (1965) (per curiam); Restatement, Second, Agency, § 350, comment d (1958).

AFFIRMED.