**Michael VOELKEL, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 92–4172–SAC.**

United States District Court, D. Kansas.

Feb. 28, 1994.

Henry O. Boaten, Topeka, KS and Henry O. Boaten, Junction City, KS, for plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, Rodney E. Loomer, Sherry A. Rozell and Gregory W. Aleshire, Turner, Reid, Duncan, Loomer & Patton, Springfield, MO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion (Dk. 86) for the court to reconsider its order (Dk. 85) filed January 11, 1994. The court in that order granted the defendant's motion for summary judgment on all of the plaintiff's claims except his claim for breach of express warranty regarding the failure of the seat belt buckle to latch or to remain latched during the accident. The defendant asks the court to reconsider and grant summary judgment also on the plaintiff's breach of express warranty claim. The plaintiff opposes the defendant's motion on procedural grounds and maintains that he can prove the elements of this claim.

■ A motion to reconsider or a motion to alter and amend gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence. Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992). A motion to reconsider is proper when the court has obviously misapprehended a party's position, the facts or the law, or has decided issues outside of those presented in the original motion. See Refrigeration Sales Co. v. Mitchell–Jackson, Inc., 605 F.Supp. 6, 7 (N.D.Ill.1983), aff'd, 770 F.2d 98 (7th Cir.1985). A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. OTR Driver at Topeka Frito–Lay, Inc.'s Distribution Center v. Frito–Lay, Inc., No. 91–4193–SAC, 1993 WL 302203, 1993 U.S. Dist. LEXIS 10918 (D.Kan. July 19, 1993).

■ The defendant's motion is not a motion to reconsider as much as it is a new motion for summary judgment. The defendant does not argue that the court misapprehended the law or the facts. What the defendant calls newly discovered evidence is nothing that the defendant did not know or could not have known through diligent efforts before filing its original motion for summary judgment. This motion to reconsider is really the defendant's first attempt at squarely addressing the plaintiff's express warranty claim.[1] Instead of admitting its oversight, the defendant offers this untenable excuse:

> General Motors did not anticipate that the Court would take Plaintiff's Factual Contentions and Legal Theories, set forth in the pretrial order, as true, especially when Plaintiff presented no evidence in support of his express warranty contention and General Motors had denied that any breach of express warranty ever occurred. (Pretrial Order, General Motors' Factual Contentions and Legal Theories, p. 9)

(Dk. 96, Reply Brief at 1–2). The defendant is simply wrong in thinking that the court

---

1. The defendant mistakenly treated the express warranty claim as just one of the plaintiff's alternative product liability theories on which the plaintiff must prove a defect in the product and the injuries, if any, caused by the defect. As a result, the defendant did not raise the issues of whether there was an express warranty, whether the belt buckle performed as warranted, and whether the alleged breach of warranty caused the plaintiff's injuries. The plaintiff's express warranty allegations in the pretrial order were never challenged. The court had little choice but to rely on those allegations and to deny summary judgment because of the defendant's failure to brief this claim properly.

erred here in looking to the plaintiff's express warranty allegations.[2]

Despite its procedural problems, the defendant's motion is convincing on the substantive issues. The motion puts the plaintiff on notice to come forth with all of his evidence on the express warranty claim. In his response to the motion, the plaintiff purports to do so. By deciding this motion, the cost and expense of an unnecessary trial is avoided. For these reasons, the court grants the defendant leave to file this new motion for summary judgment.

■ As alleged in the pretrial order, the plaintiff's express warranty claim is that he "was expressly informed by the defendant through written communication in the *owner's manual*, that the seat belt installed in the defendant's car was trouble-free, safe, of superior craftsmanship, built and manufactured with high quality materials and workmanship." (Dk. 83 at 5) (emphasis added). In its recent motion, GMC denies making any express warranty about the seat belt or its component parts in the owner's manual, warranty and owner's assistance information, and maintenance schedule for the 1984 Pontiac Firebird. GMC contends the only express warranty it made covered defects in material and workmanship and applied for the first twelve months after the original sale or the first 12,000 miles of the car, whichever occurred first. GMC denies that this express warranty was applicable when the plaintiff purchased the used 1984 Firebird in May of 1990.

The plaintiff cannot avoid summary judgment on his express warranty claim. First, the only language that he cites as an express warranty comes from a sales manual or catalog and not the owner's manual. By not pointing to any language in the owner's manual, the plaintiff has invited summary judgment on the only express warranty claim that

he has pleaded. Liberally construed, the plaintiff's allegations on his written express warranty claim simply do not reach any GMC literature other than the owner's manual. The plaintiff does not attempt to compare the owner's manual and sales manual or to explain why the latter is something that logically could be equated with an owner's manual. "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Hullman v. Board of Trustees of Pratt Community College*, 732 F.Supp. 91, 93 (D.Kan.1990), *aff'd*, 950 F.2d 665 (10th Cir.1991). Since there is no pending motion to modify or amend the pretrial order, the court is well within its discretion to exclude this new claim from the case.

Second, the language that the plaintiff cites from the sales manual is not an express warranty that the seat belts in the 1984 Pontiac Firebird are "trouble-free, safe, of superior craftsmanship, built and manufactured with high quality materials and workmanship." This is the language on which the plaintiff brings his express warranty claim:

**WHAT IT TAKES TO BUILD GREAT ROAD CARS**

The dedicated people at Pontiac would like you to know what it takes to build great road cars. Because it is as much an art, as it is a science. As much human touch and evaluation, as it is computer modeling and laboratory tests. As much a test of day-to-day realities, as it is an adventure in engineering future think. Only when all of these elements are brought together, do the truly great road cars emerge.

The 1984 Pontiacs are such cars, built with innovative styling and engineering, offering the kind of excellent performance and roadability Pontiac has been famous for.

---

2. The party seeking summary judgment has the "initial burden of showing an absence of any issues of material fact." *Nat. Union Fire Ins. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993) (citations omitted). Once the movant meets that burden, it becomes the non-movant's "burden to come forward with specific facts showing a genuine issue for trial as to elements essential to the non-moving party's case that the

moving party has called into question." *Id.* In its original motion, GMC did not carry the initial burden on the express warranty claim and its allegations in the pretrial order do not constitute a summary judgment motion. GMC gave the court no reason to question the plaintiff's ability to prove each of the essential elements to his express warranty claim as alleged in the pretrial order.

Within this brochure, you will discover why the 1984 Pontiacs are the most exciting and innovative line of cars we've ever offered.

Pontiac ... automobiles that capture the spirit and excitement of American innovation. We *build* excitement!

The court is unable to stretch this language into an express warranty on the quality and performance of the seat belts. GMC does not promise or affirm any fact regarding how the seat belts will perform or are intended to perform. That it uses "computer modeling and laboratory tests" is only GMC's general statement of what goes into its designing process. This is hardly the same as expressly warranting that its seat belts will perform without malfunction over the useful life of the automobile. "[G]reat road cars" offering "innovative styling and engineering" is non-specific language used in a context and manner that this court believes would qualify it as a seller's opinion or commendation. K.S.A. 84-2-313(2). Even if an express warranty, GMC does not promise by it that the seat belts are safe and will be trouble-free for the life of the car.

Third, the plaintiff does not come forth with facts showing that the cited language from the sales manual became a part of the basis of the bargain. There is no evidence that he read or knew of the 1984 sales manual in May of 1990 prior to purchasing the used 1984 Pontiac Firebird from a non-GMC used car dealer. In his deposition, the plaintiff did not testify to any express warranty regarding the seat belt:

Q. Right after you bought the vehicle in May of '90, did you begin experiencing problems with the seat belt buckle unlatching?

A. Uh-huh.

Q. Did it happen the day that you bought it?

A. No, it was—I really didn't notice it. I would latch it, no problem. And one morning I latched it and I went—I stepped up my body and the car wasn't even on. I went to—and I had some papers here that I wanted to take a look at before I took off when I did, the seat belt came off.

I went to tell Don Herlitz at O'Donnell Motors. And all I know is, he told me he called up to a Topeka GM to see if he can get it worked on.

Q. Do you remember the date that you reported that to Mr. Herlitz?

A. No, I sure don't.

Q. Was it within 30 days of purchasing the vehicle?

A. Yes.

Q. What type of warranty did you have with the car?

A. Excuse me?

Q. Did you have a warranty when you purchased the car?

A. The only warranty that was on the car would be the rearend, transmission, and engine.

Q. So, was this [seat belt buckle] repair something that you planned on paying for?

A. Yes.

(Michael Voelkel Dep. at 30–31). This testimony demonstrates that the plaintiff did not consider there to be any express warranty governing the seat belts. The court can find nothing in the record from which to infer that the plaintiff purchased the 1984 Pontiac Firebird in reliance upon the cited language in sales manual. For all of these reasons, the defendant is entitled to summary judgment on the plaintiff's express warranty claim concerning the seat belt buckle.

The court and the parties have suffered a loss in time and resources by the defendant's failure to brief these issues in its original motion. The plaintiff has been put to the expense of filing yet another brief. The court has been inconvenienced by having to reschedule the status conference and to decide quickly the defendant's new motion for summary judgment. The defendant does not have a good excuse for waiting until now to raise these arguments. Because the defendant unduly extended these proceedings, the court will deny the defendant its costs.

IT IS THEREFORE ORDERED that the defendant's motion to reconsider (Dk. 86) is treated as a new motion for summary judgment and granted. The clerk is directed to

enter judgment for the defendant with each side to bear its own costs.