**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Wilson M. WILLIAMS, et al., Defendants.**

No. 93–2018–GTV.

United States District Court,
D. Kansas.

March 28, 1996.

Charles A. Getto, Henry E. Couchman, Jr., for Plaintiff.

Mick Lerner, Mark A. Stites, for Defendants.

## MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

This matter is before the court on the Motion for Reconsideration (doc. 347) filed by Charles A. Getto and the law firm of McAnany, Van Cleave & Phillips, P.A. ("movants"). Movants request that the court reconsider its July 11, 1995, Memorandum and Order imposing sanctions against them. Defendants have filed a response. Movants have filed a reply. All issues in the case have now been resolved other than this motion.

This is an action against certain officers and directors of Colonial Savings and Loan Association of America, a federally chartered savings and loan. The complaint alleges breach of fiduciary duty, negligence and violation of federal law. The Resolution Trust Corporation (RTC), as receiver of the failed institution, claimed damages in excess of $14 million. During the relevant time period, RTC was represented by various attorneys in the law firm of McAnany, Van Cleave & Phillips, P.A. (McAnany law firm), and RTC staff attorneys. Charles A. Getto (Getto), a member of the McAnany law firm, was lead trial counsel. The issues which give rise to the instant motion were originally presented to the court by a motion for sanctions filed on behalf of the defendants Wilson M. Williams and David D. Padgett, Sr. requesting an order striking Plaintiff's Second Amended Complaint due to plaintiff's failure to timely produce relevant documents under the court's Scheduling Order. On July 11, 1995, the court issued a Memorandum and Order finding that the RTC had failed to comply with the court's Scheduling Order dated May 14, 1993, by not producing certain documents which it was required to produce under the terms of the order. The court found that sanctions should not only be entered against the RTC but also against its counsel, Getto and the McAnany law firm. While the court declined to issue the sanctions requested, the court ordered a public reprimand of all parties. Getto and McAnany, Van Cleave & Phillips, P.A. request reconsideration of the July 11, 1995, Memorandum and Order as to them. The RTC has not joined in the motion.

The Federal Rules of Civil Procedure do not provide for motions to reconsider, rather, they arise under D.Kan.Rule 206(f), now D.Kan.Rule 7.3. Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir.1988). A motion to reconsider gives the court the opportunity to correct manifest errors of law or fact and to review newly discovered evidence. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or applicable law, or if the party produces new evidence that could not have been obtained through the exercise of due diligence. *Voelkel v. General Motors Corporation*, 846 F.Supp. 1482 (D.Kan.1994); *Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981). An additional factor considered by some courts is the need to prevent manifest injustice. *Zimmerman v. Sloss Equipment, Inc.*, 835 F.Supp. 1283 (D.Kan.1993). "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel*, 846 F.Supp. 1482 (citing *OTR Driver at Topeka Frito–Lay, Inc.'s Distribution Center v. Frito–Lay, Inc.*,

1993 WL 302203, 1993 U.S.Dist. LEXIS 10918 (D.Kan. July 19, 1993)). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee*, 121 F.R.D. 69, 71 (N.D.Ill. 1988).

Movants argue that reconsideration is required as they did not have the opportunity to address the sanctions issue as it was characterized by the court in its July 11, 1995, Memorandum and Order. After finding that the RTC had undisputedly not produced the documents required by the Scheduling Order, the court stated that the remaining consideration was "whether RTC's noncompliance was inadvertent or excusable or whether there are other circumstances which make imposition of sanctions unjust." Movants contend that they understood the thrust of defendants' motion to be that "RTC and its outside counsel had *purposefully withheld* relevant documents." They contend that since the issue was thus framed by the defendants, they focused their arguments to establish that the documents had not been intentionally withheld. Movants also suggest that they understood the allegations in the motion for sanctions to be directed at Getto alone since he was the only attorney identified by name in the motion and supporting memoranda and it appeared that it was his conduct addressed by defendants. They suggest that they did not have the opportunity to address matters raised by the defendants' reply brief. The balance of the movants' arguments are reargument on the imposition of sanctions by the court. The movants neither acknowledge, recite, address or argue the legal principles related to motions for reconsideration or to motions for imposition of sanctions against counsel representing parties in cases before the court.

■■■ The court rejects movants' argument that reconsideration is required on the grounds that they did not have an opportunity to address the issues as stated by the court in its Memorandum and Order. The issues presented to the court for determination by the motion for sanctions were whether there had been compliance with the Scheduling Order, whether sanctions should be imposed for any noncompliance and the extent of any sanctions to be imposed. The RTC's failure to comply with the terms of the Scheduling Order was not seriously disputed. It is not now contested. While RTC originally argued it had not intentionally withheld the documents in issue, it acknowledged that they had not been produced in accordance with the deadline established by the court in the Scheduling Order. Consequently, the only contested issues to be determined by the court were whether sanctions should be imposed, the parties or attorneys against whom they would be imposed and the extent of any sanctions imposed. The defendants urged the court to impose sanctions under Fed.R.Civ.P. 37(b). The court subsequently determined that Fed.R.Civ.P. 16(f) was the appropriate rule under which the requested sanctions should be considered. However, the legal principles under the two rules are identical. Neither Fed.R.Civ.P. 37(b) nor Fed.R.Civ.P. 16(f) provide that the court shall only impose sanctions in the event it finds that the violation of the court's order was "purposeful." Both rules provide that when a party fails to obey a court order, the court may make such orders as are just and among other sanctions enter the orders set out in Fed.R.Civ.P. 37(b)(2)(B), (C), (D). In lieu of or in addition to the other sanctions that a court may impose, the court shall require a party or an attorney for a party to pay the reasonable expenses incurred unless the court finds that the noncompliance was substantially justified or other circumstances make the award of expenses unjust. The rules frame the issues to be determined by the court.

■■■ Defendants' motion for sanctions requested that the court enter sanctions including those permitted under Fed.R.Civ.P. 37(b)(2)(C) and defendants' attorneys fees in obtaining the order. Clearly the motion required the RTC to respond with sufficient facts to enable the court to make the determinations required under Rules 37(b) and 16(f). Under the rules, the court may impose sanctions against either a party or its counsel, whoever is responsible for the con-

duct that gives rise to the imposition of sanctions. *In the Matter of the Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir.1984) (en banc), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). Intentional violation of a court order is not required for imposition of sanctions. However, negligence in the handling of the case which causes unreasonable delays and interferes with the expeditious management of trial preparation may be a basis for sanctions. *Id.* Sanctions should be administered and tailored in a manner designed to effectuate the purposes of sanctions and in order of their seriousness as sound discretion dictates. *Id.* The RTC represented by movants, did not, in response to the motion for sanctions, and movants do not now, contend that the legal standards to be applied by the court in determining whether to impose sanctions against the RTC or counsel were other than those enunciated by the court in its Memorandum and Order. While the defendants argued that "the RTC and its outside counsel, McAnany, Van Cleave & Phillips, purposefully withheld 116 *other* boxes of discoverable documents, ..." the court was not limited to either accepting or rejecting the arguments as framed by the movants. Rather, the court determines the appropriate legal standards and applies them to the facts presented by the parties. The court is not precluded from imposing sanctions except when it finds that the conduct of the party or attorney is as claimed by the moving party. It was not disputed that the documents in issue had not been produced in accordance with the court's order. It was not even disputed that the documents were relevant and that the RTC was required to produce them under the court's order. It was not disputed that the documents were, at all times, in the possession of the RTC. The only contested issue presented by the motion for sanctions was whether sanctions should be imposed for the delay in producing the documents. RTC directed its entire response to the allegation that the documents had been "purposefully withheld." Neither RTC nor its counsel addressed the reasons that the documents were not produced.

Rather, Getto argued that prior to April 1994, *he* (Getto) did not know of the existence of the documents. The RTC did not argue that it was unaware of the existence of the documents or their relevance. There was no assertion that the existence of the documents was unknown to other members of the McAnany law firm. The RTC and movants had the opportunity to address the issues presented by the motion. Their failure to do so was the result of their strategy in defending the motion. The issues were raised by the motion. The litigant and its counsel had the opportunity to address the issues under the controlling legal principles. They failed to do so. The failure of the RTC and movants to understand or address the issues presented in the original motion may not now be the basis for a motion to reconsider.

The motion for sanctions clearly sought sanctions due to the conduct of the RTC and outside counsel, McAnany, Van Cleave & Phillips. In the supporting memorandum, defendants argue

> [t]his motion is filed because, as defendants' counsel recently learned at a deposition on September 1, 1994, the RTC and its outside counsel McAnany, Van Cleave & Phillips, purposefully withheld 116 *other* boxes of discoverable documents, until May 12, 1994, despite knowing about them, and having them in their possession, as early as November of 1991.[1] ... At the time the RTC and its outside counsel produced the first 113 boxes, they were aware of the existence of the other 116 boxes containing different documents, however, they did not produce them.[2]

Although movants now claim that they understood the motion to be directed toward the conduct of Getto, there is no basis for this contention. The motion and supporting memoranda do not allege responsibility solely on behalf of Getto. The affidavit supporting the motion for sanctions mentions conversations with Getto related to the ultimate production of the documents. It further alleges that Getto was on notice of the existence of these boxes as early as December

1. Page 2    2. Page 6

1991, as evidenced by a statement for services sent directly to Getto by RTC's expert witness. However, the motion and supporting memoranda reference the RTC, Getto and the McAnany law firm. RTC and the McAnany law firm simply failed to respond to the allegations and the involvement of parties other than Getto. Movants cannot now use their failure to properly assess and respond to the motion as a basis for reconsideration.

Movants argue that defendants' reply memorandum expanded the grounds for sanctions by arguing, for the first time, that other attorneys in the McAnany law firm and RTC staff attorneys knew or were responsible for withholding the documents. Movants contend, therefore, that they did not have an opportunity to address these new arguments. The reply memorandum was responsive to the response of the RTC. The response attempted to focus on the knowledge and conduct of Getto. The reply of defendants directly addressed the response. It raised no new issues of fact or law. RTC did not request leave to file a surreply to answer any of the issues which movants now claim were raised for the first time in the reply. This argument is also without merit.

Movants now seek to offer affidavits of Getto, Henry Couchman, Lawrence Greenbaum, Jr., Joseph W. Hemberger, Gregory S. Brown, Douglas M. Greenwald, and Tracy Venters, attorneys employed by the McAnany firm during the relevant time period, Karen L. Brokesh, legal assistant at the McAnany firm, and Nancy Jones, one of RTC's expert witnesses. A motion to reconsider is not an opportunity to produce evidence that could and should have been obtained and presented at the time of the original consideration of the matter through the exercise of due diligence. *Voelkel v. General Motors Corporation*, 846 F.Supp. at 1482. All of this evidence was available to movants when they filed the response to the motion for sanctions. The affidavits include no facts which were not known to movants or could not have been obtained by them through reasonable diligence when they filed the response to the motion for sanctions.

The motion for reconsideration is without merit. The movants have not advanced grounds for reconsideration. The movants have not shown that the court misapprehended the RTC's position as propounded by the movants, the facts or the applicable law. The movants have not produced new evidence that was not available at the time of the court's consideration of the motion for sanctions. The thrust of the argument has been that at the time of the filing of the response the movants and the RTC did not understand the applicable law which was subsequently applied by the court. Yet, the movants have not shown that the court misapprehended applicable law.

Notwithstanding, the court has reviewed the evidence now before it and will address the merits of the motion for sanctions considering the additional evidence presented. A brief review of the relevant facts is helpful in understanding the court's determinations. On May 7, 1993, the court held a scheduling conference pursuant to Fed.R.Civ.P. 16(b). RTC was represented by Lawrence Greenbaum of the McAnany law firm and two RTC staff attorneys. Taking into account that RTC controlled virtually all the documentary evidence in this case and that it was necessary to have production of discoverable documents prior to proceeding with other discovery including review by experts retained by the parties, the court entered an order directing the parties to produce to all other parties "all documents reasonably believed to be subject to production under Fed.R.Civ.P. 26(b)(1)" on or before June 30, 1993.[3] Plaintiff RTC timely produced certain documents which were contained in 113 boxes. Other documents were withheld under a claim that they were irrelevant to any issue in the case. Subsequently, certain of the objections were withdrawn and additional documents were produced.

In May of 1994, Getto notified defense counsel, Mick Lerner, of the existence of 116 boxes of documents which had not previously

---

**3.** The action was filed prior to the effective date of the December 1, 1993, amendments to the Federal Rules of Civil Procedure. The court's order was memorialized in paragraph "b" of the May 14, 1993, Scheduling Order.

been produced. Getto advised that out of the 116 boxes only 12 contained documents "useful to either side." These twelve boxes were produced on May 12, 1994, along with a 30 page index to all 116 boxes which had been prepared by the RTC in July of 1991. Defendants' counsel subsequently requested, and the RTC produced, the remaining 104 boxes on July 22, 1994. No explanation was provided as to how or why the 116 boxes were brought to Getto's attention other than a suggestion that one of the defense attorneys had acquired an index to the documents and requested their production.

On September 1, 1994, during the deposition of Nancy Jones, one of RTC's expert witnesses, defendants discovered that RTC had furnished Jones with a copy of the July 1991 index in November 1991 when she reviewed documents at its offices in Kansas City. Jones testified that she had examined the index and selected for review certain documents which were then made available to her. The foregoing facts were known to the court prior to its ruling on the motion for sanctions.

In the affidavits filed in support of the motion for reconsideration, the movants offer the following additional facts. Prior to March 1993, the original documents obtained from Colonial Federal Savings and Loan Association were in the possession of the RTC. On March 12, 1993, Getto wrote the RTC investigator assigned to the case requesting that he locate and transfer **specific categories of documents** to the McAnany law firm.[4] Getto asked his legal assistant to handle the communications with the RTC to obtain the documents. During the next several months, the legal assistant had several conversations with the RTC regarding production of these documents, at which times she emphasized the need to locate all the **requested** documents. During March, April, and May of 1993, the McAnany firm received 90 boxes of documents from the RTC. In May of 1993, the investigator advised the legal assistant that all of the documents **requested by Getto** had been made available to the firm. From these documents, Getto selected the documents which were produced to the defendants in compliance with the court's Scheduling Order.

In response to an interrogatory related to RTC's claimed damages and the documents relied upon for calculating those damages submitted by defendant James R. Grier, Lawrence D. Greenbaum, an attorney with the McAnany law firm, requested that Jones, the expert witness, provide the documents on which she had relied in forming her opinions. She supplied to the McAnany law firm two boxes of documents in September 1993 which were later tendered to Grier's counsel, without a detailed review by anyone in the McAnany law firm. There is no evidence that the documents were made available to all defendants' counsel. Following review of the documents by Grier's counsel, he contacted Getto on March 9, 1994, and requested copies of documents referenced in the July 1991 index which had been included in one of the two boxes received from Jones and produced to him. In attempting to locate the documents, Getto's legal assistant reviewed the index with an RTC investigator who advised that the index reflected documents in an RTC storage facility. Getto and the legal assistant reviewed the index and identified 12 boxes of documents which appeared to contain relevant documents and ordered them delivered to the McAnany law firm. Defendants' counsel was notified that the 12 boxes were available on May 10, 1994. The remaining boxes were requested from RTC when defendants' counsel made a specific

---

**4.** Pinebrooke Condominiums loan files; Colonial Investors loan files; Board of Directors' minutes for 1/76–1/90; Wilson Williams loan files; Michael K. Russell/Karla Russell loan files; Mr. & Mrs. William Worley loan files; First Diversified Investment Services loan files; all loan policies and procedures for 1/76–1/90; all examination reports, working papers or related documents for 1/76–1/90; all correspondence relating to the Pinebrooke Condominiums project; all documents pertaining to the Securities Program at Colonial; all documents pertaining to the Automobile Lending Program at Colonial; personnel files on Wilson Williams, Gary Huston, David Padgett, Sr., Harry Harrison and James Grier; employment contracts with Wilson Williams, Gary Huston, David Padgett, Sr., Harry Harrison and James Grier; collection files on Pinebrooke Condominiums; all agendas or documents circulated before board meetings for 1/76–1/90; and all files maintained of any action taken by Colonial to any regulatory criticisms.

request for them on June 17, 1994, almost one year after the date by which the documents were to have been produced under the terms of the Scheduling Order.

Upon a complete review of all of the affidavits of the attorneys with the McAnany law firm, the court finds that no attorney with the McAnany law firm requested that the RTC review its records and produce for the inspection of the defendants all documents subject to production under Fed.R.Civ.P. 26(b)(1), following the scheduling conference and the entry of the Scheduling Order. Apparently, Getto and the other attorneys in the firm simply assumed that the specific documents requested by Getto prior to the scheduling conference would encompass all of the documents subject to production under the court's order. No facts have been supplied to the court which would indicate that any attorney in the McAnany law firm attempted to determine whether the documents received from the RTC in response to Getto's request in March 1993 would satisfy the court's order entered in May 1993 or whether the RTC had other discoverable documents in addition to the specific documents previously requested by Getto.

■■■■■ When a party or a party's attorney fails to obey a scheduling order, the court may impose sanctions regarding the conduct in issue. Fed.R.Civ.P. 16(f).[5] The court may make such orders as are just. In lieu of, or in addition to other sanctions, the court may assess attorney's fees and expenses incurred due to the party's noncompliance with the court order. Fed.R.Civ.P. 37(b), under which the defendants sought the imposition of sanctions, has identical provisions. The predominate purpose of both rules is to punish litigants and attorneys for their noncompliance with discovery and pretrial orders. *Olcott v. Delaware Flood Company,* 76 F.3d 1538 (10th Cir.1996) Both Rule 16(f) and Rule 37(b)(2) require the court to keep considerations of justice in mind

when imposing sanctions for rule violations. The two rules provide a list of potential options for the court's consideration but ultimately leave it to the court's discretion to "make such orders ... as are just." *Id.* quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106–2107, 72 L.Ed.2d 492 (1982). In *In the Matter of the Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir.1984) (en banc), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985), the court stated

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial.... [T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

The primary purpose of sanctions in this context is to insure compliance with reasonable management orders for case preparation. *Id.* at 1441.

■■■■■ The court's first inquiry is whether RTC complied with the May 14, 1993, Scheduling Order. It is undisputed that it did not. The inquiry then becomes whether the noncompliance was inadvertent or excusable or whether there are other circumstances which would make imposition of sanctions unjust. The key component of the court's considerations must be to serve the interests of justice. The court has considered all the facts provided by movants, accepting their statements in their affidavits at

---

**5.** If a party or party's attorney fails to obey a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the

party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that circumstances make an award of expenses unjust.

face value. The court is unable to find any explanation for RTC's failure to comply with the court's Scheduling Order. Further, the court has found no explanation for the failure of Getto or the McAnany law firm to assure the compliance of the RTC with the court's Scheduling Order.

The evidence before the court establishes that the movants made no inquiry of their client RTC, **after the entry of the court order,** to determine what documents, other than those requested earlier by Getto, were in the possession of the RTC and subject to production under the court's order. The evidence discloses no communication with the RTC to determine what documents it had which might contain facts which could reasonably lead to the discovery of admissible evidence. Although documents were provided to the expert witness for the RTC for her review and consideration in forming opinions, no identification or review of those documents was made by counsel to determine whether they contained discoverable evidence. Although the documents reviewed by Jones were transmitted to counsel in September 1993, no detailed review was made to determine whether they had been previously produced or were new documents not previously available to counsel. These documents were apparently not made available to counsel for defendants, other than defendant Grier. When the July 1991 index was brought to Getto's attention, and he became aware that approximately 116 boxes of documents had not been previously produced, rather than review all of the documents or request that all documents be made available for review, he advised defendants' counsel, after review of the index only, that only 12 boxes contained documents "useful to either side." He then undertook to produce only the 12 boxes of documents. It was not until counsel for the defendants insisted on the production of all documents that Getto directed that the remaining 104 boxes be made available to defendants' counsel. This production of documents finally occurred on July 24, 1994, over one year after the deadline established in the Scheduling Order for their production. Of the total of approximately 229 boxes of documents produced by RTC, 116 boxes were not produced for more than one year after production was to have been made under the court's order. The intent behind the court's order in May 1993 was to assure the expeditious production of all discoverable documents in order that other discovery could proceed and the case be prepared for trial. Counsel understood the court's goals and made no objection to the order.

Movants argue that they were unaware of the existence of the documents and that they were promptly produced upon their discovery. An attorney for a litigant may not rely on the defense of ignorance of the existence of discoverable documents in the possession of the client unless he establishes that he has made an appropriate inquiry of the client as to the existence of such documents. When the court has ordered the production of documents, at a minimum, the attorney must notify the client of the court order and use reasonable efforts to assure compliance. There is no evidence that the McAnany law firm did anything to communicate the court's order to the RTC or to investigate the existence of documents subject to production under the order. Movants rely on a letter of Getto to the RTC investigator in March 1993 requesting that **specific** documents be located and furnished to the McAnany law firm. The court's order was entered on May 14, 1993, requiring the parties to produce all documents reasonably believed to be subject to production under Fed.R.Civ.P. 26(a)(1) on or before June 30, 1993. After the court ordered this production of documents, plaintiff had an obligation to locate, review and produce the documents required under the order. There has been no evidence that movants contacted the RTC, after the scheduling conference on May 7, 1993, or the entry of the Scheduling Order on May 14, 1993, to advise it of the court's order or to request that the RTC locate and prepare to produce all of the documents required by the court's order. No evidence has been offered to establish that movants took any steps to determine whether other discoverable documents existed which had not been provided to counsel in response to Getto's letter requesting specific documents. There has been no evidence offered to the effect that movants took any steps to cause the RTC to review its files

and produce all documents reasonably subject to the court's order. The evidence proffered by movants does not establish that the movants made a good faith effort to assure compliance with the court's order. This argument is without merit.

Movants contend that they undertook to produce the documents as soon as they learned of their existence. However, the facts are to the contrary. Movants not only did not review the documents furnished by Jones in September 1993 but they did not notify all counsel of their availability at that time. Defendants, who filed the motion for sanctions, were not notified of the existence of the documents and they were not made available to them. Had movants reviewed the documents in September 1993, when received, they would presumably have found the index, the existence of which they claim was unknown to them prior to March 1994. Had the index been reviewed and compared to the documents in their possession, presumably, they would have discovered the missing documents in September 1993. Notwithstanding movants' failure to conduct an appropriate inquiry of their client prior to the deadline in the Scheduling Order for the production of documents, simple review of the documents furnished by Jones in September 1993 would have led them to discovery of the 116 boxes six months prior to the time that they purportedly discovered their existence on March 9, 1994. Even when the existence of the documents was discovered, it took two months for a request to be made for the documents to be made available to defendants, followed by another month before production was tendered. Movants were at all times aware of the court's discovery deadline of July 31, 1994. The argument is without merit.

Movants argue that they timely produced a majority of the documents reasonably believed to be subject to production under the Scheduling Order, notwithstanding RTC's failure to produce approximately one-half of the available discoverable documents. They suggest that this evidences a good faith effort to comply with the order. The issue is not how many documents the movants produced, but the reason for the failure to pro-duce all of the documents required by the order. The argument is meritless.

Movants argue that, notwithstanding their failure to provide all the documents as required by the Scheduling Order, defendants listed only a few of the documents from the 116 boxes in issue on their lists of exhibits. Whether documents will be designated as exhibits is within the discretion of counsel. Over 140 documents from the boxes in issue were designated by defendants as exhibits. Over 6000 pages of documents were copied from the first 12 boxes produced. It is not the number of documents identified as exhibits that is in issue but whether the discoverable documents have been made available for review by counsel in compliance with the court's orders. The argument is without merit.

Finally, the movants argue that the court should consider all of the circumstances, including the alleged conduct of defendants' counsel in other motions and memoranda filed with the court. The court declines the invitation to **review** the conduct of other counsel in the case by a means other than a properly briefed motion. The court will not engage in comparative analysis of the conduct of the attorneys in the case. Sanctionable conduct by counsel for another party at another time is not a defense in the court's consideration of sanctions. Compliance with court orders is expected of all litigants and counsel. The court has adequate remedies to sanction the conduct of noncompliant parties when the matter is properly brought before the court. This argument is without merit.

Considering all of the evidence before the court at the time of the court's original consideration of the motion for sanctions, as well as all of the affidavits and arguments now submitted, the court reaffirms its imposition of sanctions against Getto and the McAnany law firm. The evidence now presented confirms to the court that the imposed sanction of a public reprimand was appropriate at the time of the original order and is now appropriate. The belatedly submitted facts reinforce the court's original holding. Getto and McAnany, Van Cleave & Phillips, P.A. failed to take any action to assure compliance by the RTC, their client, with the court's Sched-

uling Order. They did not advise RTC of the existence of the court's order in May 1993. They did not inquire of RTC prior to June 30, 1993, as to the existence of all documents in possession of RTC necessary to satisfy the court's order. They did not review the documents in their possession in September 1993 received from the expert witness to determine whether they had been previously produced to defendants' counsel. They did not notify all defendants' counsel of the availability of the documents received from the expert. When counsel for defendant Grier, on March 9, 1994, brought to movants' attention the existence of the 116 boxes of documents reflected on the 1991 index that may not have been previously produced, they did not promptly obtain and produce the documents although they knew the discovery deadline was July 31, 1994. After discovery of the existence of 116 boxes of documents not previously produced, Getto advised defendants' counsel after reviewing only the index of the boxes, without review of the contents of the boxes, that only 12 boxes contained documents helpful to either side. Subsequently, only 12 boxes were made available. Getto and the McAnany law firm delayed complete production of the 116 boxes from March 9, 1994, when they first had knowledge of the possibility of the existence of 116 boxes of documents which had not been produced in the case until July 24, 1994, only days before the discovery deadline. While the court does not find, upon the facts before it, wilful withholding of documents, the court does find total and complete indifference to compliance with the court's order that "all documents reasonably believed to be subject to production under Fed.R.Civ.P. 26(b)(1)" be produced on or before June 30, 1993. Getto and the McAnany law firm not only did not know what discoverable documents were in the possession of RTC but they took no steps to find out. When they became aware of additional documents which had not previously been produced they did not take prompt and immediate action to assure their production.[6]

The court also feels compelled to comment on the motion for reconsideration now before the court. The motion cites no law, discusses no legal principles related to motions for reconsideration or. motion for sanctions. Movants' response to the original motion for sanctions cited no law in support of movants position on the imposition of sanctions. The arguments presented in the motion for reconsideration are all without legal merit and evidence further disregard for the legal principles by which the court and counsel are bound in deciding such matters.

The court overrules the motion for reconsideration. Notwithstanding the lack of any legal basis for reconsideration of the court's Memorandum and Order of July 11, 1995, imposing sanctions, the court has reconsidered its order not only on the evidence then before the court, but in light of all additional evidence presented, and reaffirms its order of sanctions against Charles A. Getto and McAnany, Van Cleave & Phillips, P.A. by public reprimand.

Copies of this order shall be mailed to all counsel of record for the parties.

IT IS SO ORDERED.

---

**6.** The court notes the Order and Recommendation issued on September 28, 1994, by the Honorable Mary Ann Medler, United States Magistrate Judge for the Eastern District of Missouri, in *RTC v. Gershman, et al.*, 829 F.Supp. 1095 (E.D.Mo.1993), cited by the defendants. In *Gershman*, the RTC failed to produce thirteen banker's boxes of documents for "over a year and one-half after they were requested, almost a month after the court's initial discovery cutoff and after the completion of approximately sixty depositions." Attorneys with the law firm of McAnany, Van Cleave & Phillips, P.A. represented the RTC. Charles Getto was involved in the events giving rise to the motions before the court. The RTC claimed that its failure to produce certain documents was inadvertent. Counsel claimed that they did not know about the thirteen boxes of documents. The documents there were produced in May of 1994. This case is notable for its factual similarities.